*In re* LAWRENCE M. *et al.*, Minors (The Department of Children and Family Services *et al.*, Defendants-Appellants).—*In re* ALESHA Y. *et al.*, Minors (The Department of Children and Family Services *et al.*, Defendants-Appellants).—*In re* ADRIAN R. *et al.*, Minors (The Department of Children and Family Services *et al.*, Defendants-Appellants).—*In re* CIERRA B. *et al.*, Minors (The Department of Children and Family Services, Defendant-Appellant).—*In re* LORENZO M. *et al.*, Minors (The Department of Children and Family Services, Defendant-Appellant).—*In re* CONSUELO M., a Minor (The Department of Children and Family Services, Defendant-Appellant).

First District (5th Division)   Nos. 1—93—3113, 1—93—3267, 1—93—3773, 1—93—4050, 1—94—0001 through 1—94—0003, 1—94—0649, 1—94—3673 cons.

Opinion filed January 20, 1995.

254

Roland W. Burris, Attorney General, and James I. Marcus and Michael Fries, all of Chicago (Rosalyn B. Kaplan, Solicitor General, and Barbara E. Pitts, Daniel N. Malato, and Susan Frederick Rhodes, Assistant Attorneys General, of counsel), for appellants.

Barry C. Boykin and Sedgwick, Detert, Moran & Arnold, both of Chicago (Scott O. Reed, of counsel), for Lawrence M., Christian M., Christopher M., and Carmon M.

Patrick T. Murphy, Public Guardian, of Chicago (Kathleen G. Kennedy and Margot Gordon, of counsel), for other minors.

JUSTICE McNULTY delivered the opinion of the court:

This case involves nine consolidated interlocutory appeals by the Department of Children and Family Services (DCFS) from juvenile court orders requiring DCFS to provide and pay for in-patient drug treatment services for mothers whose children were removed from their custody due to the mothers' drug-related neglect of them. We affirm all of the trial court orders except the two concerning Law-

rence M., Christian M., Christopher M., and Carmon M., appeals numbers 1—93—3113 and 1—93—4050, which we reverse.

■ DCFS asserts on appeal that the juvenile court orders directing DCFS to pay for drug treatment services provided to the parents of minors before the court are barred by the doctrine of sovereign immunity and violate the doctrine of separation of powers. DCFS also argues that the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1—1 *et seq.* (West 1992)) does not authorize DCFS to provide and pay for in-patient drug treatment services for parents of minors. The scope of review in an interlocutory appeal is limited to a determination of whether the court abused its discretion in granting the interlocutory relief. (*Kellerman v. MCI Telecommunications Corp.* (1985), 134 Ill. App. 3d 71, 479 N.E.2d 1057.) As to all but one of these orders, the trial courts acted within their discretion when they ordered DCFS to pay for in-patient drug treatment which was in the best interest of the children and essential to the reunification of the children with their mothers.

■ We agree with the parties that this case is not moot because it falls within an exception to the mootness doctrine. Although the orders at issue have already been complied with, we nonetheless consider the issues raised by the orders since they are capable of repetition, yet evading review. See *In re A Minor* (1989), 127 Ill. 2d 247, 537 N.E.2d 292.

■ DCFS first claims that the juvenile court orders directing DCFS to provide any pay for in-patient treatment services to the mothers of minors violates the doctrine of sovereign immunity. DCFS claims that the orders entered a money judgment against the State, thereby vesting the Court of Claims, and not the juvenile court, with jurisdiction to enter the orders. In determining whether an action is brought against the State, the court is not bound by the formal identification of the parties, but rather, must examine the issues involved and the nature of the relief sought. (*Children's Memorial Hospital v. Mueller* (1986), 141 Ill. App. 3d 951, 491 N.E.2d 103.) A claim that will potentially subject the State to liability is a claim against the State and within the exclusive jurisdiction of the Illinois Court of Claims. (*Hernandez v. Fahner* (1985), 135 Ill. App. 3d 372, 481 N.E.2d 1004.) A suit against State officials seeking to compel them to perform their duty is not a suit against the State. *In re V.H.* (1990), 197 Ill. App. 3d 52, 554 N.E.2d 686.

■ We do not find that the juvenile court orders at issue here were barred by the doctrine of sovereign immunity. DCFS, in several of its appellate briefs filed in this case, names Gary T. Morgan, guardian administrator, as an appellant in the case. Furthermore, one of

DCFS' briefs names as an appellant DCFS administrator Carlton Williams. Even in those cases naming only DCFS, Gary T. Morgan is the temporary custodian of the minors and the orders are essentially orders directing DCFS administrators to provide mandated services. As such, these orders compel administrators to perform their duty and are not suits against the State.

Furthermore, we are not persuaded by *Children's Memorial Hospital v. Mueller* (1986), 141 Ill. App. 3d 951, 491 N.E.2d 103, relied upon by DCFS in support of its sovereign immunity argument. In *Mueller*, the hospital sued the parents of minor children to recover charges for services rendered to the minors. The parents filed a third-party complaint seeking indemnification from DCFS for any judgment entered against them, since DCFS was the legal guardian of the children at the time the services were rendered. The hospital then amended its complaint naming DCFS as a defendant. The court found that it was the Court of Claims, and not the circuit court, which had jurisdiction over the claims brought against DCFS.

*Mueller* is essentially a debt collection case, with the parents and hospital seeking reimbursement from DCFS after the services had already been rendered. In the instant case, the orders directing DCFS to pay for short-term in-patient drug treatment were entered before any services were rendered. Moreover, the orders entered here were of a temporary nature, necessitated by a situation requiring urgent attention. We are therefore more persuaded by *In re V.H.* (1990), 197 Ill. App. 3d 52, 554 N.E.2d 686, wherein the court found that an injunction which required DCFS to pay for certain children to remain in a residential placement in Arkansas did not violate sovereign immunity. The minors in *V.H.* sought a preliminary injunction when the guardian administrator sought to remove the minors from a residential treatment facility. The circuit court entered an order enjoining the administrator from removing the children from the residential placement and ordered the administrator of DCFS to make arrangements for the payment of such treatment until an assessment of the situation could be made. The orders here, like those in *V.H.*, were interim orders. Because the DCFS administrator in *V.H.* sought to remove the children from residential placement, but developed no plan for taking care of the children once they were removed, it was appropriate for the court to order DCFS to pay for the children to remain in the residential placement until an alternative plan for the children's care was made.

In *V.H.*, DCFS agreed to the residential placement and admitted that it would ultimately be responsible for paying for such treatment. In the instant case, DCFS does not dispute the need for in-

patient drug treatment, but simply claims that it should not be required to pay for such treatment. DCFS failed, however, in all but one case, to develop an alternative treatment plan. DCFS prepared no case plan, never asked the court for time to prepare a case plan and never suggested that in-patient treatment was inappropriate. In at least one case, the trial court made two findings that DCFS had failed to make reasonable efforts to unite the family. In fact, DCFS had failed to even assign a caseworker to the case. The court therefore had a right to enter an interim order for the payment of in-patient treatment, pending DCFS' development of a case plan.

The Juvenile Court Act authorizes the court to enter orders related to temporary custody, including "the provision of services to the minor or *his family*." (Emphasis added.) (705 ILCS 405/2—10(2) (West 1992).) The policy of the Act is to preserve and strengthen the minor's family ties, removing the minor from the family only when there is no other way to protect the minor's welfare or safety. (705 ILCS 405/2—10(1), (2) (West 1992).) The Juvenile Court Act provides that as part of the temporary custody proceedings, "[t]he court shall require documentation by representatives of the Department of Children and Family Services *** as to the reasonable efforts that were made to prevent or eliminate the necessity of removal of the minor from his or her home." 705 ILCS 405/2—10(2) (West 1992).

The trial court orders were entered only after finding that DCFS had not made reasonable efforts to reunite the families pursuant to the Juvenile Court Act. The courts recognized the need to immediately place the mothers in in-patient drug treatment programs since at the time the children were removed from the home, the mothers were most motivated to cooperate in order to get their children back. The circuit courts recognized that these orders would greatly enhance the opportunity for the children to be reunited with their families. Since DCFS recognized the need for the in-patient treatment, yet refused to pay for such treatment or come up with an alternative treatment plan or method of payment, the mothers and their children were placed in limbo. The court properly recognized that it needed to act quickly in order to increase the chances of family reunification.

The trial courts stated that the mothers would be given only one opportunity to successfully complete the in-patient drug treatment programs. If the mothers successfully completed the programs, the families would be reunited, saving State money that would have been spent on foster care. If the mothers did not successfully complete the program, DCFS would not again be required to pay for the mothers' in-patient drug rehabilitation. The trial courts did not impose a long-

term obligation on DCFS, but rather ordered a short-term plan that could save the State significant sums that would have to be paid in foster care if the mothers remained drug addicted and the families could not be reunited. Based upon this particular record, where DCFS failed to make reasonable efforts to reunite the families, we find that these interim orders were appropriate.

■ However, we do not believe the orders entered in cases numbers 1—93—3113 and 1—93—4050 were proper. Those orders required DCFS to pay for an in-patient drug treatment program that would take both the mother and her children. The DCFS worker felt that it was not in the children's best interest to remain with the mother during her drug treatment. DCFS located two residential drug treatment programs that would have immediately accepted the mother free of charge, but the mother rejected both of these programs, claiming they were too strict. In that case, DCFS did in fact come up with a treatment plan. It was improper for the trial court to order DCFS to pay for a treatment program that would take the mother and her children when two free treatment programs had been rejected by the mother.

■ DCFS also claims that the court order directing DCFS to provide and pay for the mothers' treatment services violated the doctrine of separation of powers. DCFS claims that the juvenile court usurped the function of both the legislative and executive branches of government when it decided what services were appropriate for the families and then ordered DCFS to pay for those services. DCFS relies upon *In re J.K.* (1992), 229 Ill. App. 3d 569, 594 N.E.2d 433, wherein the court found that the trial court assumed the role of the prosecutor when it determined which criminal offenses should be charged and directed the filing of such charges.

We recognize that it is DCFS' responsibility to determine what services are necessary for families of abused or neglected children who are at risk of being placed outside the home and to develop a case plan for the family and file the plan with the juvenile court. (705 ILCS 405/2—10(2) (West 1992).) Here, however, while DCFS was aware that the mothers were in need of in-patient drug treatment, in all but one of these cases DCFS did not develop a treatment plan. In ordering DCFS to pay for such treatment, the court did not assume the role of DCFS, but merely entered an interim order compelling DCFS to comply with the agency's statutory mandate to provide services to reunite the family.

■ DCFS also claims that the juvenile court's subject matter jurisdiction over DCFS is limited by the provisions of the Juvenile Court Act, and that the court lacked jurisdiction to order DCFS to

provide services and pay for drug treatment services for an adult. However, we do not interpret the Act so narrowly. The Act is to be liberally construed to carry out its purpose and policy. (705 ILCS 405/1—2(4) (West 1992).) The Act specifically provides:

> "If the minor is ordered placed in a shelter care facility of the Department of Children and Family Services or a licensed child welfare agency *** the court may enter such other orders related to the temporary custody as it deems fit and proper, including the provision of services to the minor or *his family* to ameliorate the causes contributing to the finding of probable cause or to the finding of the existence of immediate and urgent necessity." (Emphasis added.) (705 ILCS 405/2—10(2) (West 1992).)

The Act also states the policy "to preserve and strengthen the minor's family ties whenever possible, removing him or her from the custody of his or her parents only when his or her welfare or safety or the protection of the public cannot be adequately safeguarded without removal." (705 ILCS 405/1—2(1) (West 1992).) The circuit court has the duty to protect the child's best interest at each step of the wardship adjudication process. *In re J.J.* (1991), 142 Ill. 2d 1, 566 N.E.2d 1345.

Furthermore, we do not read the Juvenile Court Act in isolation, but rather also consider DCFS' mandate. DCFS is mandated to "protect the best interests of the child, offer protective services in order to *** stabilize the home environment, preserve family life whenever possible and protect the health and safety of children in all situations in which they are vulnerable to child abuse or neglect." (325 ILCS 5/2 (West 1992).) DCFS has a duty to provide family preservation services which are defined as "services to prevent the placement of children in substitute care, to reunite them with their families if so placed and if reunification is an appropriate goal." (325 ILCS 5/8.2 (West 1992).) DCFS is also obligated to provide services to the child and his or her family in order to prevent the unnecessary separation of children from their families and restore to their families children who have been removed. 20 ILCS 505/5(a)(3)(C), (D) (West 1992).

Therefore, pursuant to the provisions in the Juvenile Court Act and DCFS' mandate, the court may enter interim orders for such services where it has found that they are in the best interest of the minor and his or her family and will help preserve the family. The trial courts here had authority to enter orders requiring DCFS to pay for the mothers' in-patient drug treatment since such treatment will ultimately benefit the minor children. It is in the best interest of the child to have a parent who is drug free. Furthermore, in-patient drug treatment for the mothers of abused or neglected children will help stabilize the home environment and pave the way for the eventual

return of the children. Because DCFS failed to make reasonable efforts to fulfill its duty to reunite the family, the juvenile court was entitled to order DCFS to pay for short-term in-patient services which would enhance the likelihood of family reunification.

■ DCFS claims that its purpose is to make referrals for drug and alcohol treatment and that the Department of Alcoholism and Substance Abuse (DASA) is the State agency responsible for paying for such treatment. However, there is nothing to indicate that DASA is the exclusive State agency to provide substance abuse treatment. Rather, DASA was designed to work with other State agencies in providing substance abuse treatment. (See 20 ILCS 305/4—101(1) (West 1992).) Furthermore, while DCFS claims that it was DASA's responsibility to pay for the mothers' in-patient drug treatment, DCFS did nothing to seek such payment from DASA. DCFS never attempted to bring DASA before the court nor asked for time in which to get DASA involved in these proceedings.

Accordingly, we affirm all of the trial court orders except the two orders concerning Lawrence M., Christian M., Christopher M., and Carmon M. contained in appeals numbers 1—93—3113 and 1—93—4050, which we reverse.

Affirmed in part and reversed in part.

COUSINS, P.J., and GORDON, J., concur.