*In re* CHIARA C., a Minor (Chiara C., Petitioner-Appellee, v. The Department of Children and Family Services, Respondent-Appellant).

First District (2nd Division)   Nos. 1—95—1886, 1—95—2211 cons.

Opinion filed April 16, 1996.—Rehearing denied May 22, 1996.—Modified on denial of rehearing May 28, 1996.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Jessie A. Wang-Grimm, Assistant Attorney General, of counsel), for appellant.

Patrick T. Murphy and Ron Fritsch, both of Office of Cook County Public Guardian, of Chicago, for appellee.

JUSTICE DiVITO delivered the opinion of the court:

The issue presented by this appeal is whether the circuit court has subject matter jurisdiction to order the Department of Children and Family Services (DCFS), as the legal guardian and custodian of a minor, to place that minor in a specific residential facility. For reasons that follow, we conclude that it does not.

Chiara C. (Chiara) was born in 1983. In April 1991, following a finding of maternal neglect, she and her younger brother, Richard N., were placed in the custody of DCFS. At that time, their father, who has since been released, was in prison. During the next two years, Chiara and her brother were placed with a series of caretakers, including an aunt and uncle, their step-grandmother, and briefly, their mother. In September 1993, Chiara, who had earlier been subject to two discrete instances of sexual abuse, and her brother were placed in the foster care of a maternal aunt. According to her fifth-grade teacher at Wildwood School, who described the school as one of the best in the city, Chiara exhibited no behavioral problems and received A's and B's.

The instant action was initiated by an April 1995 emergency motion to change placement, filed by Chiara through her guardian *ad litem*, the public guardian of Cook County. In the motion, Chiara requested that the circuit court order DCFS to place her in Girls Hope, a licensed residential facility for college-bound students which provides clothing, medical care, counselling, and high school and college tuition. Chiara, who had been preliminarily accepted by Girls Hope, requested the placement because of her desire to achieve academically and to live in a stable environment. DCFS objected to the placement. Its grounds for doing so were that its current policy was to place children in the least restrictive setting, keeping siblings together whenever possible; Chiara's placement with her brother and

her aunt was currently stable; DCFS would provide Chiara's college tuition and other special needs; and minors have difficulty returning to a residential setting after being placed in an institutional one.

The record is ambiguous as to whether DCFS is obligated to pay for Chiara's tuition at Girls Hope. When the circuit court asked who pays the tuition there, an unidentified speaker responded, "[p]rivate funding, except for three DCFS students. *** If DCFS funding were available [for Chiara], we would appreciate it." DCFS has placed other minors in the Girls Hope affiliate, Boys Hope.

Finding no "rational reason why DCFS is opposing a child who has been through everything this child has been through to try to make it in life," the circuit court ordered DCFS to immediately prepare and send an admissions packet to Girls Hope so that the admission process for Chiara could be completed. DCFS did so but filed a notice of appeal from that order. Later, the circuit court expressly ordered DCFS to immediately change the placement of Chiara to Girls Hope and it denied a stay pending appeal. DCFS complied with that order, placed Chiara at Girls Hope, and filed another notice of appeal. The two appeals have been consolidated.

DCFS contends that the circuit court lacked subject matter jurisdiction to order it to place Chiara in Girls Hope because that placement was a specific service, which the Juvenile Court Act of 1987 (the Act) (705 ILCS 405/1—1 et seq. (West 1994)) does not authorize the court to order. Chiara responds that the Act was not violated because the orders simply directed her "placement" and did not require DCFS to order "specific services." As a threshold matter, therefore, we must characterize the circuit court's orders regarding Girls Hope.

■ The Act states that it is the responsibility of a legal custodian to provide education. 705 ILCS 405/1—3(9) (West 1994). Where DCFS is that custodian, it sets a goal for permanent custodial placement of the minor. 705 ILCS 405/1—3(11.1) (West 1994). Services intended to help the minor achieve that goal are outlined in a service plan. 89 Ill. Adm. Code § 305.50 (1994). That plan must include, inter alia, "a description of the educational program/services the child is receiving or needs to receive" and a determination of "who will provide the services." 89 Ill. Adm. Code §§ 305.50(b)(6), (b)(7) (1994).

Here, DCFS set family reunification as a permanency goal for Chiara. Part of her service plan included a "Scholastic Summary" section, which provided the name of the school and the type of program to be attended. Notwithstanding Chiara's attempts to construe the court's orders regarding Girls Hope as simply orders of "placement," they are essentially orders to change the service plan by ordering specific residential and educational services.

■ We turn to the merits of DCFS' subject matter jurisdiction argument. "Subject matter jurisdiction refers to the power of the court to adjudge concerning the general question involved [citation], as well as the power to grant the particular relief requested [citations]. Every act of the court beyond that power is void." *In re M.M.*, 156 Ill. 2d 53, 64, 619 N.E.2d 702, 709 (1993).

■ Our supreme court has provided the general principles that guide our consideration of the subject matter jurisdiction issue: when the legislature, through statutory enactment, creates rights and duties which have no counterpart in common law or equity, it creates a "justiciable matter"; although it is the constitution that confers upon courts the power to adjudge concerning a statutorily created right, "it is by reason of the statute that the justiciable matter exists." *In re M.M.*, 156 Ill. 2d at 65, 619 N.E.2d at 710. Thus, in cases where "a court's power to act is controlled by statute, the court is governed by the rules of limited jurisdiction [citations], and courts exercising jurisdiction over such matters must proceed within the strictures of the statute [citation]." *In re M.M.*, 156 Ill. 2d at 66, 619 N.E.2d at 710. See, in addition to *In re M.M.* (circuit court lacked statutory authority to condition power of guardian to consent to adoption), *In re K.S.*, 264 Ill. App. 3d 963, 637 N.E.2d 1163 (1994), *appeal denied*, 158 Ill. 2d 552, 645 N.E.2d 1358 (1994) (circuit court lacked statutory authority to order report of guardian and release of DCFS documents regarding death of child in foster care); *In re Ardedia L.*, 249 Ill. App. 3d 35, 618 N.E.2d 804 (1993) (circuit court lacked statutory authority to order DCFS to provide services to ward once she turned 21); *In re P.F.*, 265 Ill. App. 3d 1092, 638 N.E.2d 716 (1994) (circuit court lacked statutory authority to order DCFS to cease efforts at family reunification). Our supreme court has specifically stated that "[j]uvenile court proceedings qualify as special statutory proceedings." *In re M.M.*, 156 Ill. 2d at 66, 619 N.E.2d at 710.

■ Section 2—28(2) of the Act provides in relevant part:

"If, after receiving evidence, the court determines that the [permanency] plan or the services contained in the plan are not reasonably calculated to facilitate achievement of the permanency goal, the court shall put in writing the factual basis supporting the determination and enter specific findings based on the evidence as to the reason or reasons why the services are not reasonably calculated to facilitate achievement of the permanency goal. The court also shall enter an order remanding the matter to the Department of Children and Family Services for further consideration of the nature of the services to be provided in light of the court's findings. *Unless otherwise specifically authorized by law,*

> *the court is not empowered under this subsection (2) or under
> subsection (3) to order specific services or service providers to be
> included in the plan.*" (Emphasis added.) 705 ILCS 405/2—28(2)
> (West 1994).

Thus, the statute delineates the specific power of the circuit court: if
the court is dissatisfied with the permanency plan or its goal, it is
required to make specific findings and to remand the matter to DCFS
for its further consideration. The statute specifically disempowers the
circuit court to order specific services or service providers.

The purpose of a permanency review hearing is to determine,
*inter alia,* "the appropriateness of the services delivered and to be
delivered to effectuate the [permanency] plan and goal." 705 ILCS
405/1—3(11.2) (West 1994). Although the proceeding here was not
labelled a permanency review hearing, its purpose—to determine the
appropriateness of Chiara's residence and educational services—was
the equivalent of such a hearing.

■ The circuit court is likewise specifically disempowered from
ordering specific services following an intervention proceeding or a
dispositional hearing. 705 ILCS 405/1—5(2)(b), 2—23(3) (West 1994).
Thus, a reading of the Act as a whole shows that at hearings on the
appropriateness of juvenile services, the legislature intended that the
circuit court not be empowered to order specific services. Because
education is a service as contemplated by DCFS and the proceeding
at issue here was analogous to a permanency review hearing, we
conclude that the strictures of section 2—28 apply to the instant
case. Thus, unless another provision of the Act authorizes the circuit
court's orders here, those orders must be vacated. 705 ILCS 405/2—
28(2) (West 1994).

Chiara maintains that sections 2—27(1) and 2—28(4) of the Act
provide the circuit court the authority to order her placement in
Girls Hope. 705 ILCS 405/2—27(1), 2—28(4) (West 1994).

■ Section 2—28(4) provides that a minor may apply to the court
for a change in custody. Chiara maintains that "custody" under sec-
tion 2—28(4) means not only legal custody or guardianship but also
physical custody. She cites *In re P.P.,* 261 Ill. App. 3d 598, 602, 633
N.E.2d 965 (1994), in support of her contention. In that case, however,
the circuit court ordered a change in legal custody. We agree that a
circuit court may alter legal custody if warranted by the circum-
stances and the best interests of the child, but we find no support for
Chiara's contention that section 2—28(4) permits a circuit court to
order a change in physical custody without a change in legal custody.

Section 2—27(1) of the Act provides the options available to the
circuit court when a minor is removed from the legal custody of her

current guardian. The court may, at the time of the custody hearing or at any later point:

"(a) place him in the custody of a suitable relative or other person as legal custodian or guardian;

(b) place him under the guardianship of a probation officer;

(c) commit him to an agency for care or placement, except an institution under the authority of the Department of Corrections or of the Department of Children and Family Services;

(d) commit him to the Department of Children and Family Services for care and service." 705 ILCS 405/2—27(1)(a) through (1)(d) (West 1994).

Chiara asserts that because Girls Hope is an agency, or licensed child care facility, subsection (c) authorizes the circuit court to order her placement there.

The plain language of section 2—27, however, demonstrates that its purpose is to provide the circuit court with options for *custodial* placement after it has removed a child from the custody of its parent or guardian. 705 ILCS 405/2—27 (West 1994). The statute does not authorize a court to order *residential* placement or schooling. Although section 2—27(2) empowers an agency to order residential placement ("[a]n *agency* whose representative is appointed guardian of the person or legal custodian of the minor may place him in any child care facility" (emphasis added) (705 ILCS 405/2—27(2) (West 1994))), no similar power is given to a circuit court.

Moreover, because Chiara was already in the custody of DCFS pursuant to subsection (d) and that commitment was not challenged, Chiara's claim could succeed only if the options provided by section 2—27(1) were not mutually exclusive. Section 2—27(2) provides in relevant part that "[w]hen a minor is committed to any agency [pursuant to section 2—27(1)(c)], the court shall appoint the proper officer or representative thereof as legal custodian or guardian of the person of the minor." 705 ILCS 405/2—27(2) (West 1994). Under that mandatory language, Chiara's commitment to Girls Hope would require its representative to be appointed her guardian. Here, Chiara's uncontested guardian is the administrator of DCFS; no change of legal custody has been ordered and no order appointing a representative of Girls Hope as guardian has been made. What is more, any order resulting in two guardianships would be illogical and undesirable and is plainly not contemplated by the Act. Accordingly, we conclude that the options provided by section 2—27(1) relate to legal custody and are mutually exclusive.

We note that a contrary result was reached by the fourth district in *In re White*, 103 Ill. App. 3d 105, 429 N.E.2d 1383 (1982). There,

the circuit court had transferred custody of two neglected minors to the Department of Mental Health and directed that they be placed at specific developmental centers. *In re White*, 103 Ill. App. 3d at 107, 429 N.E.2d at 1386. Concluding that the residential facilities at issue came within the rubric of "agency" under section 2—27(1)(c)'s identical predecessor provision (Ill. Rev. Stat. 1979, ch. 37, par. 705—7(1)(c)), the fourth district, without further analysis, held that the circuit court was authorized to direct placement of the minors. *In re White*, 103 Ill. App. 3d at 109, 429 N.E.2d at 1387. The minors were thus committed twice, once to the Department of Mental Health and once to the specific residential facilities. As previously stated, we do not believe that section 2—27 permits multiple guardianships. Moreover, the Act as amended since that decision specifically prohibits the circuit court from ordering specific services or service providers. 705 ILCS 405/2—28(2), 1—5(2)(b), 2—23(3) (West 1994). We therefore decline to follow *In re White*.

Chiara also relies on *In re Lawrence M.*, 269 Ill. App. 3d 253, 645 N.E.2d 1069 (1995), *appeal granted*, 162 Ill. 2d 568, 652 N.E.2d 342 (1995). There, this court held that the circuit court had the authority in certain instances to order that DCFS pay for short-term in-patient drug treatment for the drug-addicted parents of minors under the temporary care of DCFS. *In re Lawrence M.*, 269 Ill. App. 3d at 259, 645 N.E.2d at 1074. Although those services were "specific," the court held that they were authorized by section 2—10 of the Act, which provides, *inter alia*, that "the court may enter such other orders relat[ing] to the temporary custody as it deems fit and proper, including the provision of services to the minor or his family to ameliorate the causes contributing to the finding of probable cause [to believe that a minor is abused or neglected]." 705 ILCS 405/2—10(2) (West 1994); *In re Lawrence M.*, 269 Ill. App. 3d at 258, 645 N.E.2d at 1073-74. Because section 2—10 is inapplicable to the instant case, *In re Lawrence M.* does not support Chiara's position.

Because the circuit court's orders requiring DCFS to place Chiara in Girls Hope require specific residential and educational services in violation of the Act, we reverse and remand for further proceedings, including a permanency review hearing. Mindful that Chiara has been at Girls Hope for a significant period of time, we direct that she be permitted to remain there pending the outcome of the hearing. That should afford DCFS, which has succeeded in pursuing the important issue involved in this appeal, an opportunity to consider its present position concerning Chiara's placement at Girls Hope, with due regard for her present status, her achievements at Girls Hope, her personal desires, and her best interests.

59

We note that section 2—28(2) was modified during the pendency of the proceedings at issue here. Pub. Act 89—17, eff. May 31, 1995 (amending 705 ILCS 405/2—28(2) (West 1994)). Although the modification does not affect the substance of our decision here, we direct that the circuit court follow the current law on remand.

Reversed and remanded with directions.

HARTMAN, P.J., and BURKE, J., concur.