707 N.E.2d 649 (1999)
303 Ill. App.3d 190
236 Ill.Dec. 522
In the Interest of M.V., A minor, Respondent-Appellee,
Patrice and Phillip McGuire, Interveners-Appellants, and
Allen and Roselyn Jones, Interveners-Appellees.
Nos. 1-98-2114, 1-98-2739.
Appellate Court of Illinois, First District, Sixth Division.
February 5, 1999.
*650 Cahill, Christian & Kunkle, Ltd., Chicago (Douglas W. Bax, of counsel; Michael J. Ruzicka, Mt. Prospect, of counsel), for Appellants Pat and Phil McGuire.
Monahan & Cohen, Chicago (Joseph T. Monohan, Paul S. Franciszkowicz, Howard Rosenblum, of counsel), for Appellees, Allen and Roselyn Jones.
Cook County Public Guardian, Chicago (Patrick T. Murphy, and Ron Fritsch, of counsel), for Appellee Monika V.
Justice ZWICK delivered the opinion of the court:
Appellants, Patrice and Phillip McGuire, the former foster parents of M.V., appeal an order entered by the juvenile division of the circuit court of Cook County, which found that the placement of M.V. with her current foster parents, appellees Allen and Roselyn Jones of Texas, was necessary, appropriate and in the best interests of the minor child.
The McGuires claim on appeal that the juvenile court exceeded its statutory authority in finding the current foster-care placement necessary and appropriate. They also contend that the court lacked jurisdiction to rule on the placement decision because appellees Allen and Roselyn Jones had failed to exhaust their administrative remedies available through a service appeal. Lastly, the McGuires argue that the decision of the circuit court was against the manifest weight of the evidence.
This court previously issued its opinion in In re M.V., 288 Ill.App.3d 300, 224 Ill.Dec. 217, 681 N.E.2d 532 (1997) (M.V.I), which held that the trial court lacked statutory authority to order a specific placement of M.V. The facts pertaining to the initial stages of this litigation are set forth in detail in that opinion and will not be restated here, except as necessary.
After the issuance of M.V. I, the biological parents of M.V., the Joneses, and the *651 McGuires notified the Department of Children and Family Services (DCFS) of their interest in becoming permanent caretakers of M.V. Thereafter, DCFS contracted with the Juvenile Protection Agency (JPA) to conduct a comprehensive evaluation of M.V. and of her relationship with each of the parties seeking to obtain permanent custody of her. JPA ultimately tendered to DCFS its report which recommended that custody of M.V. be transferred from the Joneses to the McGuires, M.V.'s former foster parents in Illinois. Pursuant to that recommendation, DCFS initiated plans to effectuate the transfer. The Joneses thereafter commenced a service appeal, challenging the anticipated transfer of M.V. from their home in Texas to the McGuires in Illinois. However, all of the parties agreed that the matter should be decided finally by the trial court after a permanency hearing. DCFS then withdrew its transfer notice, pending the permanency hearing, and the service appeal was abandoned.
The court conducted a permanency hearing and heard voluminous and detailed evidence regarding M.V.'s well-being and her relationships with all parties involved. This evidence included reports from child-welfare professionals as well as testimony from experts and members of the families desiring to adopt M.V. Specifically, the court heard testimony by the following people: Timothy Gebel, the Director of Foster Care for the Children's Shelter of San Antonio; Roselyn Jones, M.V.'s current foster mother; Allen Jones, M.V.'s current foster father; Vonetta Jones, the daughter of Roselyn and Allen Jones; Dr. Le'Roy Reese, a licensed as a clinical psychologist and Assistant Professor in the Department of Psychology at Chicago State University, with a Ph.D. in psychology, specializing in clinical child psychology; Nan Parson, the clinical supervisor for JPA; Bill Maffy, the caseworker for DCFS who has worked on M.V.'s case since February 1996; Debbie Palmer Thomas, a field service manager for DCFS with a master's degree in clinical social work, who was responsible for overseeing M.V.'s case; Barbara White, a licensed child social worker with a master's degree in social work and an expert hired by the public guardian to conduct an assessment of M.V.; Phillip McGuire, M.V.'s former foster father; Patrice McGuire, M.V.'s former foster mother; Megan McGuire, the daughter of Phillip and Patrice McGuire; and Aaron McGuire, the son of Phillip and Patrice McGuire.
The court also considered the written report prepared by JPA, the written report of Barbara White, the psychological evaluation of M.V. prepared by Dr. Reese, as well as certain other memoranda prepared by social workers involved in the case.
At the conclusion of the permanency hearing, the court determined that it was necessary, appropriate, and in the best interests of M.V. to remain with the Jones family in Texas, and the McGuires have appealed that decision.
We initially address the McGuires' claim that the juvenile court exceeded its statutory authority in finding M.V.'s current foster-care placement necessary and appropriate to achieve the goal of adoption. The McGuires assert that this ruling was improper because it constituted a specific placement. We disagree.
As we held in M.V. I, 2-28(2) specifically precludes the juvenile court from ordering a specific placement or foster home person after DCFS has been appointed guardian of the minor. 705 ILCS 405/2-28(2) (West 1996). However, the Juvenile Court Act mandates that the permanency goal and service plan devised by DCFS be subject to periodic review by the court. Section 2-28(2) requires the juvenile court to hold permanency review hearings "until the court determines that the plan and goal have been achieved." 705 ILCS 405/2-28(2) (West 1996). At the permanency hearing, the court is required to consider (i) the permanency goal contained in the service plan, (ii) the appropriateness of the services contained in the plan and whether those services have been provided, (iii) whether reasonable efforts have been made by all the parties to the service plan to achieve the goal, and (iv) whether the plan and goal have been achieved. 705 ILCS 405/2-28(2) (West 1996). Section 2-28(3)(a) of the Act requires the juvenile court to address the question of *652 custody at each permanency review hearing. 705 ILCS 405/2-28(3)(a) (West 1996). Additionally, section 2-28(3)(b)(iii) mandates that, following the permanency hearing, the court must enter a written order which includes a determination as to whether the minor's placement is necessary and appropriate to the plan and goal. 705 ILCS 405/2-28(3)(b)(iii) (West 1996).
In the instant case, the trial court had subject matter jurisdiction and acted in accordance with the authority and mandates of the statute. It is beyond dispute that the hearing conducted by the court on May 5, 1998, was a permanency hearing. Its purpose was to review the propriety of the foster placement of M.V. All of the parties involved had designated it a permanency hearing, and, at the hearing, the trial court reviewed the permanency goal, the current placement decision, and plan devised by DCFS. In addition, the order entered on that date reflected that the cause had been called for a permanency hearing, and the order was entitled a "Permanency Order." Upon consideration of all of the evidence presented, the court determined that the placement of M.V. with the Jones family was necessary and appropriate. We hold that the trial court was statutorily authorized to conduct such a hearing. See In re A.L., 294 Ill.App.3d 441, 446, 228 Ill. Dec. 746, 689 N.E.2d 1167 (1998); In re Chiara C., 279 Ill.App.3d 761, 216 Ill.Dec. 344, 665 N.E.2d 404 (1996).
We also reject the McGuires' assertion that the court lacked jurisdiction to rule on the placement decision because appellees Allen and Roselyn Jones failed to exhaust their administrative remedies. In support of this assertion, the McGuires cite the section of the Children and Family Services Act which provides that the service appeal process is the exclusive remedy with respect to the administrative decisions of DCFS. See 20 ILCS 505/5(o) (West 1996).
However, the record demonstrates that all parties, including the McGuires, explicitly and unanimously agreed to proceed with the permanency hearing and to have the issue of M.V.'s custody determined by the trial court judge in a single proceeding. Pursuant to that agreement, DCFS withdrew the transfer notice, rendering the service appeal moot. At the time the permanency hearing took place, no service appeal was pending, and the trial court clearly had jurisdiction under the statute to conduct the permanency hearing. For the McGuires to now object to the procedure they urged in the trial court is disingenuous and unacceptable. We hold that the court acted properly in conducting a permanency hearing and was not deprived of jurisdiction by the failure of the Joneses to pursue the service appeal of the transfer notice which had previously been withdrawn.
Finally, the McGuires argue that the decision of the circuit court was against the manifest weight of the evidence. We disagree.
In child custody proceedings under the Juvenile Court Act, the juvenile court's primary concern is the best interest of the child involved, and to that end, the court is vested with wide discretion. In re Stilley, 66 Ill.2d 515, 520, 6 Ill.Dec. 873, 363 N.E.2d 820 (1977); In re M.B., 241 Ill.App.3d 697, 705, 182 Ill.Dec. 197, 609 N.E.2d 731 (1992); In re W.B., 213 Ill.App.3d 274, 282, 157 Ill.Dec. 101, 571 N.E.2d 1120 (1991); In re J.K.F., 174 Ill.App.3d 732, 733-34, 124 Ill.Dec. 375, 529 N.E.2d 92 (1988). The trial court's opportunity to observe the demeanor and conduct of the parties and witnesses must be given great weight, and, upon review, its determinations will not be disturbed unless they are against the manifest weight of the evidence. In re Stilley, 66 Ill.2d at 520, 6 Ill.Dec. 873, 363 N.E.2d 820; In re A.P., 179 Ill.2d 184, 204, 227 Ill.Dec. 949, 688 N.E.2d 642 (1997); In re M.B., 241 Ill.App.3d at 705, 182 Ill.Dec. 197, 609 N.E.2d 731; In re W.B., 213 Ill.App.3d at 282, 157 Ill.Dec. 101, 571 N.E.2d 1120; In re J.K.F., 174 Ill.App.3d at 734, 124 Ill.Dec. 375, 529 N.E.2d 92.
Applying this standard to the at bar, after an exhaustive review of the evidence presented in the trial court and the record on appeal, we conclude that the trial court's determination was not against the manifest weight of the evidence.
As we have stated above, the juvenile court was not only authorized, but obligated *653 to review the current placement of M.V. In so doing, the court carefully considered all of the evidence presented. That evidence included written reports as well as expert testimony and the testimony of the family members who wish to have custody of M.V. Moreover, the court had the opportunity to observe the demeanor and conduct of the witnesses who testified.
Thus, the court considered the expert testimony of Dr. Reese, Barbara White, Timothy Gebel, and others who concluded that M.V. was healthy, happy and thriving in the home of the Joneses. Those experts further testified that transferring M.V. from the Joneses to the McGuires would be disruptive and traumatic, causing her to experience yet another loss in her young life. In addition, the court considered the opinions of Annette Gibbs and Bill Maffy, who also stated that moving M.V. back to the home of the McGuires would cause additional and unnecessary trauma. Maffy testified that although both sets of foster parents were good parents, the permanency and stability which has been so lacking in M.V.'s life can best be achieved if she remains with the Jones family. Further, the court heard substantial evidence that M.V. was upset and unhappy at the prospect of having to leave her home, school, church, and relationships established while living with the Joneses in Texas.
We recognize that the court was presented with a difficult case. However, after reviewing all the evidence presented and noting that M.V. desperately needed permanency and stability in her life, the court determined that her current placement with the Joneses was necessary, appropriate, and in her best interests. Based upon our review of this record, we hold the trial court's determination was not against the manifest weight of the evidence.
For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.
AFFIRMED.
CAMPBELL, P.J., concurs.
QUINN, J., specially concurs.
Justice QUINN, specially concurring:
I concur in affirming the order of the trial court. The McGuires' position on appeal is that the only order that the juvenile court had authority to enter under the Juvenile Court Act was a determination of whether DCFS's placement of M.V. with the McGuires was appropriate. The McGuires cite this court's holding in M.V.I, as authority for their position. The juvenile court's finding went further, determining that placement with the Joneses was more appropriate.
While we cite In re A.L., 294 Ill.App.3d 441, 228 Ill.Dec. 746, 689 N.E.2d 1167 (1998), and In re Chiara C., 279 Ill.App.3d 761, 216 Ill.Dec. 344, 665 N.E.2d 404 (1996), for our holding that the trial court was statutorily authorized to conduct a permanency hearing, I believe another basis exists for this holding.
On March 4, 1998, the Cook County Public Guardian's office filed a motion entitled "M.V.'s Motion to Vacate Certain Orders." That motion included the following statement:
"As a result of lengthy discussions, attorneys in the General Counsel and Regional Counsel offices of the Illinois Department of Children and Family Services ("DCFS"), attorneys in the office of the Cook County Public Guardian on behalf of M.V., and attorneys representing the intervenor current foster parents, Roselyn and Allen Jones, and the intervenor former foster parents, Patrice and Philip McGuire, have agreed to a process to resolve this uncertainty. To this end, the parties have agreed to request that this Court render a decision as to M.V.'s foster placement ..."
When the motion came on to be heard in the trial court on March 9, 1998, the attorney for the McGuires made the following statements:
"There are other avenues that the parents, the Jones[es] and the [Public Guardian] have, as far as the administrative process.
The parties got together * * * to try to put it all in one forum so that we don't relitigate this as administrative * * *.
* * *

*654 What we are trying to do is combine it all in one * * * hearing."
The attorney for DCFS made the following statements:
"Everyone objected to the service appeal. We don't want to litigate in two forums. [DCFS] said we don't want to litigate the case where the Court has a right to place under [a section 2-28] order. We came up with an agreement * * *.
* * *
We * * * decided the forum we could agree upon is in front of you to make a decision regarding the foster parents * * *.
* * *
[W]e agreed to do this in front of you."
When the trial court further considered the motion on March 18, 1998, the attorney for the McGuires made the following statements:
"I agree with the motion. I think all the parties sat down, and the purpose of the Court vacating its Order is so that this can all be decided at one shot, your Honor.
There was [sic] many forums everybody could have ran [sic] to. In the best interests of M.V., the parties agreed that we would come here, and everybody was notified of that meeting.
* * * [I]t was agreed that we try to do this in one place so that after the Court makes a ruling, we don't go to another administrative hearing on this case.
The McGuires are in favor of the motion."
On appeal, the McGuire's assert that they merely agreed to have the juvenile court review whether DCFS' decision to place M.V. with the McGuires was appropriate, considering that the permanency goal was adoption. This contention is belied by not only the transcripts above, but also by the conduct of the court and the parties.
The Public Guardian and the Joneses called witnesses relating to M.V.'s placement with the Joneses. These actions were consistent with their position that the juvenile court was conducting a permanency hearing to determine the ultimate placement of M.V.
The actions of the McGuire's throughout this case from it's inception have been consistent in showing that they have always acted in the best interests of M.V., as loving parents should. These actions evidenced a desire on the part of the McGuires to resolve the issue of which foster parents would be allowed to adopt M.V. in as short a time as possible. It is vitally important that child custody cases be decided as expeditiously as possible. While M.V. lived with the McGuires for almost four years, she has now lived with the Jones family for almost three years. While it is perfectly understandable and even commendable that the McGuires explore every avenue which could possibly lead to the return of M.V., all of the parties requested the juvenile court to make the determination that it did.