*In re* M.V., a Minor (D. Jean Ortega Piron, Guardianship Adm'r of the Department of Children and Family Services, Appellant).

First District (6th Division)   Nos. 1—96—3289, 1—96—3324 cons.

Opinion filed May 2, 1997.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Huma A. Kahn, Assistant Attorney General, of counsel), for appellant.

Patrick T. Murphy, Public Guardian, of Chicago (Ron Fritsch, of counsel), for appellee.

JUSTICE ZWICK delivered the opinion of the court:

The subject of this appeal is an interlocutory order entered by the juvenile court of Cook County which required the Department of Children and Family Services (DCFS) to remove the minor from her current foster parents in the State of Texas and to place her with the previous foster parents in Illinois within 48 hours. We stayed that order pending our resolution of this appeal.

DCFS argues that this order must be vacated because (1) the juvenile court exceeded its statutory authority in requiring DCFS to place the minor with the former foster parents in Illinois within 48 hours, (2) the Illinois foster parents failed to exhaust their administrative remedies prior to seeking judicial review of the placement decision made by DCFS, and (3) the court abused its discretion in ordering that the minor be returned to Illinois and placed with the Illinois foster parents within 48 hours.

The record reveals that M.V. was born November 7, 1991, the only child of her natural parents. On May 14, 1992, M.V. was removed from her parents' home and placed in protective custody with DCFS pursuant to a physician's report that M.V.'s natural parents stated they had attempted to suffocate her.

The following day, counsel for DCFS filed a petition on behalf of M.V., seeking an adjudication of wardship, which alleged that the

conduct of M.V.'s parents created a substantial risk of physical injury to her. The trial court granted a motion by DCFS for temporary custody of M.V. and appointed the Guardianship Administrator for DCFS as temporary guardian. In addition, the Cook County public guardian was appointed attorney of record and guardian *ad litem* for M.V.

After a trial on July 18, 1992, the court found that M.V. had been abused and neglected due to a lack of care and exposure to an injurious environment. DCFS placed M.V. in the care of Illinois foster parents on July 30, 1992. On September 11, 1992, the court entered an adjudication order that reflected its findings of abuse and neglect. The court set a date for a dispositional hearing and ordered DCFS to conduct an investigation and to prepare a report. On April 28, 1993, the juvenile court entered a dispositional order adjudicating M.V. to be a ward of the court and awarding guardianship to the Guardianship Administrator for DCFS, with the right to place the child. M.V. continued to remain in the physical custody of the same Illinois foster parents.

In May 1993, M.V.'s natural mother, who was employed by the United States Armed Forces, was transferred to Texas. In approximately October 1993, M.V.'s natural father also moved to Texas to be with M.V.'s mother.

On July 18, 1995, the natural parents filed a motion requesting that M.V. be returned to their custody. This motion asserted that the natural parents had performed all of the duties required under the service plan previously established by DCFS, that the caseworker believed they were able to care for M.V., and that they had a good relationship with M.V. The trial court denied this motion on September 12, 1995, but ordered DCFS to immediately make all reasonable efforts to place M.V. in a foster home in San Antonio, Texas. In addition, the court determined that it was in the best interest of M.V. to change the permanency goal from long-term foster care to reunification with her natural parents, and the court entered an order to this effect.

On January 24, 1996, the court ordered that M.V. be placed in foster care in San Antonio, Texas, and that all visits between M.V. and her natural parents be supervised. The court also ordered DCFS to file documentation that the natural mother was participating in individual counseling and that the natural father was also participating in individual counseling as well as random drug testing and an aftercare drug and alcohol abuse program.

On February 14, 1996, M.V. was placed with foster parents in San Antonio, Texas. On February 28, 1996, the court again ordered

the filing of the documentation specified above. This documentation required that the natural parents execute "release of information" forms authorizing the disclosure of confidential information. On May 3, 1996, the court ordered each of the natural parents to have a psychological evaluation performed in Illinois and required that their travel and lodging expenses be paid for by DCFS. The "release of information" forms were executed by the natural parents on or about July 22, 1996.

On July 29, 1996, M.V.'s former foster parents in Illinois filed an emergency motion to intervene which requested that M.V. be returned to Illinois. On August 6, 1996, the Illinois foster parents filed an amended motion, seeking that M.V. be returned to their home and seeking to change the permanency goal to adoption. In support of this motion, the Illinois foster parents alleged that M.V.'s natural parents had failed to submit the "release of information" forms to DCFS and that the natural father had tested positive for methadone and librium.

Psychological evaluations were performed for the natural parents on August 8 and 9, 1996, in Texas.

On August 14, 1996, the juvenile court held a hearing on the Illinois foster parents' amended motion to return M.V. to Illinois and to commence adoption proceedings. At this hearing, Timothy J. Gebel, director of foster care for the Children's Shelter in San Antonio, testified in detail about M.V.'s condition and adjustment to living with the foster family in Texas. Gebel also testified regarding the natural parents' cooperation with Texas service agencies and the progress they had made in preparation for family reunification.

Also presented was the affidavit of Annette Gibbs, a foster care specialist, which attested to the natural parents' positive relationship and contact with M.V. after her arrival in Texas.

In addition, the court considered the psychological evaluations of the natural parents, which described the relationship between M.V. and her parents and which recommended reunification of the family. The evaluations also urged continued treatment and counseling for the natural parents.

The medical records for the natural father reflected that he was receiving methadone and librium pursuant to a treatment program that had been prescribed for him.

The court also heard evidence that the delay in transmission of the "release of information forms" executed by the natural parents was, in part, attributable to the Texas Department of Protective and Regulatory Services.

At the conclusion of the hearing, the trial court concluded that

the natural parents had not cooperated with the court or with DCFS by failing to timely execute the "release of information" forms and by failing to come to Illinois for the psychological evaluations. The court determined that M.V.'s natural parents had not made sufficient progress to warrant reunification of the family. Accordingly, the court ordered that M.V. be returned to Illinois and placed in the home of the former foster parents within 48 hours.[1] DCFS filed the instant appeal challenging that interlocutory order.

DCFS initially asserts that the juvenile court lacked the authority to order that M.V. be placed with the Illinois foster parents. This assertion effectively challenges the circuit court's subject matter jurisdiction to enter the order of August 14, 1996.

■ Subject matter jurisdiction is the power of the court to hear and determine causes of the general class to which the particular cause belongs and to grant the particular relief requested. *In re M.M.*, 156 Ill. 2d 53, 64, 619 N.E.2d 702 (1993); *In re Chiara C.*, 279 Ill. App. 3d 761, 765, 665 N.E.2d 404 (1996); *In re Ardelia L.*, 249 Ill. App. 3d 35, 39, 618 N.E.2d 804 (1993). Every act of the court beyond that power is void. *In re M.M.*, 156 Ill. 2d at 64; *In re Chiara C.*, 279 Ill. App. 3d at 765. Where the legislature enacts a comprehensive statutory scheme, creating rights and duties that have no counterpart in common law or equity, the legislature has created a "justiciable matter." *In re M.M.*, 156 Ill. 2d at 65; *In re Chiara C.*, 279 Ill. App. 3d at 765. These special statutes define the limits of the newly created justiciable matter and limit the authority of the circuit court. *Board of Education of Warren Township High School District 121 v. Warren Township High School Federation of Teachers, Local 504*, 128 Ill. 2d 155, 165, 538 N.E.2d 524 (1989); *In re K.S.*, 264 Ill. App. 3d 963, 966, 637 N.E.2d 1163 (1994). Where a court's power to act is controlled by statute, the court is governed by the rules of limited jurisdiction, and courts exercising jurisdiction over such matters must proceed within the strictures of the statute. *In re M.M.*, 156 Ill. 2d at 66; *In re Chiara C.*, 279 Ill. App. 3d at 765; *In re Ardelia L.*, 249 Ill. App. 3d at 39.

■ The Juvenile Court Act of 1987 (705 ILCS 405/1—1 *et seq.* (West 1994)) constitutes such a comprehensive scheme, creating rights and duties which have no counterpart in common law or equity. See *In re M.M.*, 156 Ill. 2d at 66; *In re Chiara C.*, 279 Ill. App. 3d at 765. Accordingly, the juvenile court is governed by the rules of limited ju-

---

[1]The court also ruled that the permanency goal be changed from reunification with the natural parents to adoption, but this ruling was subsequently vacated by the trial court upon a motion to reconsider filed by DCFS.

risdiction and is empowered to exercise only the authority specifically granted by the Juvenile Court Act. *In re M.M.*, 156 Ill. 2d at 66; *In re K.S.*, 264 Ill. App. 3d at 966.

Considering these restrictions, we conclude that the juvenile court exceeded its authority to order that M.V. be returned to the former foster parents in Illinois.

■ Once a minor has been adjudicated a ward of the court based upon a finding of abuse, neglect or dependency, the court is permitted to enter a dispositional order as defined by section 2—23 of the Juvenile Court Act, which includes placement in accordance with section 2—27. 705 ILCS 405/2—23 (West 1994).

Section 2—23(3) states, in pertinent part:

"The court also shall enter any other orders necessary to fulfill the service plan ***. Unless otherwise specifically authorized by law, the court is not empowered under this subsection (3) to order specific placements, specific services, or specific service providers to be included in the plan." 705 ILCS 405/2—23(3) (West Supp. 1995).

■ Section 2—27(1) sets forth the placement options that are available to the court and provides that the court may

"(a) place him in the custody of a suitable relative or other person as legal custodian or guardian;

(b) place him under the guardianship of a probation officer;

(c) commit him to an agency for care or placement, except an institution under the authority of the Department of Corrections or of the Department of Children and Family Services;

(d) commit him to the Department of Children and Family Services for care and service." 705 ILCS 405/2—27(1)(a) through (1)(d) (West 1994).

If the minor is committed to DCFS, that agency has the obligation to prepare a service plan and to place the child in foster care. 20 ILCS 505/5(a)(1)(A), 6a (West 1994).

■ It is well established that a juvenile court may choose only among the dispositional alternatives provided in the statute. See *In re P.F.*, 265 Ill. App. 3d 1092, 1104, 638 N.E.2d 716 (1994). Thus, the trial court's discretion in entering a dispositional order is limited to the alternatives specified under section 2—27(1) of the Juvenile Court Act. *In re P.F.*, 265 Ill. App. 3d at 1104. The juvenile court is not free to reject or expand its statutory authority. *In re P.F.*, 265 Ill. App. 3d at 1104; *In re Ardelia L.*, 249 Ill. App. 3d at 40.

Except as provided in section 2—27(1)(a), the court has no statutory authority to designate a specific placement or foster home. Moreover, the language contained in sections 2—23(3) and 2—28(2) specifically precludes the juvenile court from ordering placement with a

particular person after DCFS has been appointed guardian of the minor. 705 ILCS 405/2—23(3), 2—28(2) (West Supp. 1995); *In re Chiara C.*, 279 Ill. App. 3d at 766.

■ The order requiring DCFS to return M.V. to Illinois and to place her with the former foster parents within 48 hours was not consistent with or authorized by any of the dispositional alternatives set forth in section 2—27(1). We hold, therefore, that the juvenile court exceeded its statutory authority, and the order of August 14, 1996, must be vacated.

The Cook County public guardian argues that the trial court's action was permissible under section 1—5(2)(b) of the Juvenile Court Act. This argument is unpersuasive.

Section 1—5 defines the rights of all parties to proceedings brought under the Juvenile Court Act. Subsection (2)(b) specifies the limited circumstances in which a foster parent, not otherwise a party to the proceedings, may petition the court to intervene in a matter pending before the juvenile court.

Section 1—5(2)(b) provides as follows:

> "If after an adjudication that a minor is abused or neglected as provided under Section 2—21 of this Act and an application has been made to restore the minor to any parent, guardian, or legal custodian found by the court to have caused the neglect or to have inflicted the abuse on the minor, a foster parent may petition the court to intervene in the proceeding for the sole purpose of requesting that the minor be placed with the foster parent, provided that the foster parent (i) is the current foster parent of the minor or (ii) has previously been a foster parent for the minor for one year or more, has a foster care license or is eligible for a license, and is not the subject of any findings of abuse or neglect of any child. The juvenile court may only enter orders placing a minor with a specific foster parent under this subsection (2)(b) and nothing in this Section shall be construed to confer any jurisdiction or authority on the juvenile court to issue any other orders requiring the appointed guardian or custodian of a minor to place the minor in a designated foster home or facility." 705 ILCS 405/ 1—5(2)(b) (West 1994).

In construing statutes, the fundamental goal is to ascertain and give effect to the intent of the legislature. *Nottage v. Jeka*, 172 Ill. 2d 386, 392, 667 N.E.2d 91 (1996); *State Farm Fire & Casualty Co. v. Yapejian*, 152 Ill. 2d 533, 540-41, 605 N.E.2d 539 (1992); *Harvel v. City of Johnston City*, 146 Ill. 2d 277, 282, 586 N.E.2d 1217 (1992). Under the primary rule of statutory construction, to which all others are subordinated, the language chosen by the legislature must be given its ordinary and popularly understood meaning and must be

read within the context of the entire provision of which it forms an integral part. *Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 95 Ill. 2d 211, 215, 447 N.E.2d 394 (1983).

With these principles in mind, we interpret the language of section 1—5(2)(b) to mean that a court is authorized to order a specific placement of the minor only after intervention by the foster parent and when a valid application for restoration of custody by a parent is before the court.

In the case at bar, the only request for custody of M.V. by her natural parents was filed in July 1995 and was specifically denied by the trial court on September 12, 1995. As a result, that request was no longer pending on August 14, 1996, and, therefore, the court was not authorized to order placement with the Illinois foster parents pursuant to section 1—5(2)(b).

Contrary to the assertion by the public guardian, the parents' application for custody of M.V. did not remain "alive" after its denial on September 12, 1995. Logic and reason dictate that once an application for custody has been denied by the court, it is, in effect, a nullity and cannot be considered pending in perpetuity. Our interpretation of the language of section 1—5(2)(b) does not permit the court to order a specific placement any time an application for custody has been made, notwithstanding the fact that the application was denied long before the petition to intervene was filed. Because the Illinois foster parents did not file their petition to intervene until more than 10 months after the parents' request for custody had been denied, no such application was pending in August 1996. Accordingly, the court was not empowered to order that M.V. be placed with the Illinois foster parents under section 1—5(2)(b).

Because the trial court acted beyond the scope of its authority under the Juvenile Court Act, we hold that it lacked jurisdiction to order that M.V. be returned to Illinois and placed with the former foster parents within 48 hours.

In light of that holding, we need not address the remaining issues raised by DCFS, which relate to the exhaustion of administrative remedies by the Illinois foster parents or a possible abuse of discretion by the juvenile court.

For the foregoing reasons, the interlocutory order of the circuit court of Cook County is vacated, and the cause is remanded for further proceedings.

Vacated and remanded.

McNAMARA and LEAVITT, JJ., concur.