681 N.E.2d 652 (1997)
288 Ill. App.3d 811
224 Ill.Dec. 337
In re R.M., a Minor (The People of the State of Illinois, Appellee,
v.
Tara Smith, Intervenor-Appellant (The Department of Children and Family Services, Appellant)).
No. 1-96-0518.
Appellate Court of Illinois, First District, Second Division.
May 27, 1997.
*653 Stacy E. Platt, Legal Assistance Foundation of Chicago, Chicago, Laurene Heybach, Law Project, Oak Park, Alan M. Poster and Mary L. Mills, Sonnenschein Nath & Rosenthal, Chicago, for Intervenor-Appellant.
Patrick T. Murphy, Public Guardian, Ron Fritsch, Chicago, for Minor-Appellee.
James E. Ryan, Attorney General of Illinois, Barbara A. Preiner and Erik G. Light, Chicago, for Department of Children and Family Services.
Justice McNULTY delivered the opinion of the court:
Intervenor Tara Smith and the Illinois Department of Children and Family Services (DCFS) appeal from a juvenile court order granting the guardian ad litem's (GAL's) motion that the minor child, R.M., be removed from Smith's foster care and placed with foster parents Kent and Pamela Lawton. Both Smith and DCFS claim on appeal that the juvenile court acted outside its statutory authority when it entered an order removing R.M. from Smith's home and requiring that R.M. be placed with a specific foster parent. Smith and DCFS also claim that the court's decision was in error since the GAL failed to exhaust the administrative remedies on behalf of R.M. prior to seeking judicial review of the foster care placement decision that had been made by DCFS. In addition, Smith asserts that she was deprived of her right to notice and an opportunity to be heard when the juvenile court ruled on the GAL's motion to remove R.M. from her home. We vacate the trial court order removing R.M. from Smith's home and placing her in the care of the Lawtons.
On August 25, 1993, the State's Attorney filed a petition for adjudication of wardship in the juvenile court on behalf on R.M., alleging that, due to her parent's neglect, R.M. suffered from nonorganic failure to thrive. R.M. was born on September 28, 1990, and she has received regular treatment since infancy for nonorganic failure to thrive, which is malnutrition caused by multisystematic problems, including the child's environment and family interactions.
*654 The juvenile court appointed the guardian administrator for DCFS as temporary guardian and custodian of R.M. and Patrick Murphy, the Cook County public guardian, as guardian ad litem. DCFS placed R.M. with her maternal grandmother. On November 15, 1993, the juvenile court entered an adjudication order finding R.M abused and neglected. DCFS removed R.M. from her grandmother's home in November 1993 and, in December 1993, placed her in the home of Tara Smith. On February 7, 1994, the juvenile court entered an order adjudicating R.M. to be a ward of the court and awarding the guardian administrator for DCFS the right to place the child. R.M. remained in Smith's custody.
In February 1995, R.M. was hospitalized for nonorganic failure to thrive. She had been hospitalized once before, while living with her parents, for nonorganic failure to thrive, and she gained weight while hospitalized. When R.M. was hospitalized the second time for two weeks, she gained six ounces. In the four months prior to her hospitalization, while in Smith's care, R.M gained three ounces. When R.M. was released from the hospital she returned to Smith's care.
LaRabida Hospital has of policy of reporting to DCFS cases where a child gains weight in the hospital, since this is evidence of nonorganic failure to thrive. Therefore, someone on the hospital staff called in a report to the DCFS hotline regarding R.M. The DCFS Division of Child Protection (DCP) investigated the hotline report and in early April 1995, R.M. was removed from Smith's care by the Lutheran Social Services of Illinois (LSSI), the private agency handling R.M.'s case, and placed her in the home of Pamela and Kent Lawton.
On April 6, 1995, Smith filed a service appeal challenging R.M.'s removal from her home and seeking an emergency review of the basis for the removal. On May 22, 1995, an independent hearing officer from DCFS conducted an emergency review to consider Smith's request for the immediate return of R.M. As a result of this hearing, the DCFS hearing officer issued an interim decision on June 1, 1995, finding that there was no risk of imminent harm to R.M. if she were to return to Smith's home. On June 12, 1995, DCFS returned R.M. to Smith's home. DCFS conducted an optional mediation as part of the service appeal process on June 15, 1995. The placement issue was not resolved in this mediation session.
On June 19, 1995, R.M.'s court-appointed GAL filed with the court an "Emergency Motion to Change Placement," claiming that it was not in R.M.'s best interest to be placed in Smith's home. No party at the hearing on this motion apprised the juvenile court of Smith's pending service appeal. Three witnesses testified at the hearing, Madeline Shalowitz, Ida Mabry, and Ezillia Bell. Madeline Shalowitz, who is in charge of the Failure to Thrive Clinic at LaRabida Hospital, testified that she has been responsible for R.M.'s pediatric care for over two years. Dr. Shalowitz testified that the clinic required Smith to bring R.M. to the hospital at least once a month. However, Smith failed to bring R.M. to the hospital for four months and R.M. gained little weight during that time. Dr. Shalowitz testified that R.M. gained weight when she was hospitalized and was returned to Smith's home under a 60-day contract, which described specifically what R.M. should eat and how much weight she was expected to gain. Dr. Shalowitz testified that within two weeks after being discharged from the hospital, R.M. lost the weight she had gained while in the hospital. During the two months R.M. was in the Lawtons' home, however, she gained weight and looked healthier. Dr. Shalowitz recommended that R.M. stay with the Lawtons. According to Dr. Shalowitz, Smith's home is not appropriate for R.M. since Smith failed to follow the clinic's instructions for caring for R.M. Dr. Shalowitz testified that keeping R.M. out of Smith's home is an emergency matter.
Ida Mabry, a nurse at LaRabida Hospital, testified that she conducted a home visit to Smith's home in March 1995, to see R.M. and deliver the 60-day contract to Smith. At 3:30 or 4 p.m., R.M. was eating hot dogs and potato chips, but Smith was not at the table with R.M., as the clinic had recommended. Smith told Mabry that she leaves Pediasure, an enriched caloric drink recommended by *655 the hospital, out so that R.M. can get it whenever she wants. Mabry testified that she explained to Smith that in order to get R.M. to drink Pediasure, Smith must sit down with R.M. and encourage her to do so. Mabry gave Smith and the Lawtons' the same instructions on feeding techniques that should be used to encourage R.M. to eat. Mabry visited the Lawtons and was pleased to see that R.M. looked healthy and had put on weight. Mabry found Smith's home to be an inappropriate placement for R.M. and recommended that she stay with the Lawtons rather than Smith.
Ezillia Bell, the program director at LSSI, testified that she believed that R.M. should remain with Smith because R.M. has been well cared for while in Smith's home. Bell testified that R.M. did not gain weight while at Smith's home because Smith was not given adequate instructions on how to care for R.M.
At the conclusion of the hearing, the trial court found that it was not in R.M.'s best interest to remain in Smith's home. The court's decision was based on the fact that R.M. failed to thrive in Smith's home, but did gain weight while in the hospital and while in the Lawtons' home. The court ordered that R.M. be removed from Smith's home and placed in the Lawtons' home.
On July 18, 1995, Smith filed a motion to intervene and a motion to reconsider. On October 23, 1995, the juvenile court judge granted Smith's motion to intervene. On November 29, 1995, Smith filed a motion to vacate the order removing R.M. from her home and placing her with the Lawtons. Smith presented to the court the affidavit of Dr. Aleta Clark, who determined that R.M. had gained sufficient weight while in Smith's care. The trial court denied Smith's motion to reconsider. The court found that Smith did not have standing or intervenor status for the purposes of the court's emergency hearing, and that the decision to remove R.M. from Smith's home was proper in order to prevent R.M. from imminent harm.
Smith and DFCS filed separate appeals. Both Smith and DCFS claim that the juvenile court acted outside its statutory authority when it entered the order requiring that R.M. be removed from Smith's home and placed with a specific foster home, the Lawtons.
On April 3, 1996, either DCFS or LSSI removed R.M. from the Lawtons' home and placed her in the home of other nonrelative foster parents, the Jeters. In light of this development, the GAL claims that DCFS's and Smith's challenge to the trial court's authority to place R.M. with a specific foster home, the Lawtons, is moot. An issue on appeal becomes moot when events occur after the filing of the appeal that make it impossible for the appellate court to grant the complaining party effectual relief. Mount Carmel High School v. Illinois High School Ass'n, 279 Ill.App.3d 122, 215 Ill.Dec. 855, 664 N.E.2d 252 (1996); In re A Minor, 127 Ill.2d 247, 130 Ill.Dec. 225, 537 N.E.2d 292 (1989).
However, a case that normally would be considered moot may qualify for review if it involves a question of great public interest. In re A Minor, 127 Ill.2d 247, 130 Ill.Dec. 225, 537 N.E.2d 292 (1989). The criteria for the public interest exception are: (1) the public nature of the question; (2) the desirability of an authoritative determination for the purpose of guiding public officers; and (3) the likelihood that the question will generally recur. Minor, 127 Ill.2d at 257, 130 Ill.Dec. 225, 537 N.E.2d 292. We find the public interest exception applicable here since the issue of whether the juvenile court may order that a child be removed from one foster home and placed in another is an issue of public concern. Furthermore, it is desirable that juvenile court judges receive guidance as to the circumstances under which they may make specific placement decisions. It is also likely that this issue will recur. We therefore address the issue of whether the juvenile court had authority to order that R.M. be placed with a specific parent as well as whether the court had authority to order that R.M. be removed from Smith's home.
The GAL concedes that the juvenile court did not have the authority to order R.M.'s specific placement with the Lawton's. The juvenile court's authority is defined and limited by the Juvenile Court Act of *656 1987(Act) (705 ILCS 405/1-1 (West 1994)). In re M.M., 156 Ill.2d 53, 189 Ill.Dec. 1, 619 N.E.2d 702 (1993). The juvenile court is authorized under the Act to enter an order requiring a guardian or custodian to place a child in a specific foster home in only one circumstance; when an application to restore a minor to a parent, guardian or legal custodian has been filed, then foster parents may intervene in the proceeding for the sole purpose of requesting that the minor be placed in their care. 705 ILCS 405/1-5(2)(b)(West 1994). That section of the Act further clarifies:
"The juvenile court may only enter orders placing a minor with a specific foster parent under this [Section] and nothing in this Section shall be construed to confer any jurisdiction or authority on the juvenile court to issue any other orders requiring the appointed guardian or custodian of a minor to place the minor in a designated foster home or facility." 705 ILCS 405/1-5(2)(b)(West 1994).
This section is clearly not applicable here.
In all other instances, once the court chooses to place a child with DCFS, the Act does not permit the court to then order DCFS to place the child in any specific setting. 705 ILCS 405/2-23(3), and 2-28(2)(West 1994); In re M.V., 288 Ill.App.3d 300, 224 Ill.Dec. 217, 681 N.E.2d 532 (1997) (the court has authority only under section 1-5-(2)(6) to order a specific placement); In re T.L.C., 285 Ill.App.3d 922, 221 Ill.Dec. 321, 675 N.E.2d 228 (1996)(court concluded that when guardianship is placed with DCFS, there is no statutory authority permitting the court to dictate to DCFS exactly where custody must be placed); In re Chiara C., 279 Ill.App.3d 761, 216 Ill.Dec. 344, 665 N.E.2d 404 (1996)(the court found that the circuit court orders requiring DCFS to place minor in specific residential and educational services are in violation of the Juvenile Court Act).
We now turn to the issue of whether the juvenile court had authority to grant the GAL's emergency motion to change R.M.'s placement and order R.M.'s immediate removal from Smith's home. DCFS has established an administrative review and appeals process for children and families who request or receive child welfare services from DFCS. 20 ILCS 505/5(o)(1994). Foster parents and children receiving services may appeal decisions regarding placement of a minor pursuant to section 5(o) of the Children and Family Services Act (20 ILCS 505/5(o) (West 1994)). 89 Ill. Adm.Code § 337.60 (1994). Section 5(o) provides that "[a]n appeal of a decision concerning a change in the placement of a child shall be conducted in an expedited manner." 20 ILCS 505/5(o)(West 1994).
The service appeal process consists of an emergency review, optional mediation, a fair hearing, and a final administrative decision. 89 Ill. Adm.Code, § 337.30 (1994). An emergency review allows for an interim decision pending a fair hearing, and such emergency decisions are made within 10 days of the date that emergency review was requested. 89 Ill. Adm.Code § 337.30(b)(1994). Mediation is offered within 30 days of the date the service appeal was filed. 89 Ill. Adm.Code § 337.30 (1994). If the dispute is not resolved in mediation, then an administrative law judge conducts a fair hearing where all parties may present evidence supporting their positions. 89 Ill. Adm.Code § 337.30(c)(1994). Following the hearing, the administrative law judge makes a recommendation to the Director of DCFS. The burden of proof is on DCFS to show that the decision was made in the best interest of the child. The Director of DCFS issues the final administrative decision. 89 Ill. Adm.Code § 337.20 (1994). Any party to the service appeal proceeding may seek judicial review of DCFS's final administrative decision under the Administrative Review Law (20 ILCS 505/9.9 (West 1994)).
In the instant case, Smith initiated a service appeal on April 6, 1995, after R.M. was removed from her care. On May 22, 1995, an emergency hearing was held by DCFS authorities to consider Smith's request for the immediate return of R.M. On June 1, 1995, a hearing officer issued an interim decision determining that there was no risk of imminent harm to R.M. if she were returned to Smith's home until the service appeal process *657 was completed. On June 12, 1995, DCFS returned R.M. to Smith's home. The GAL participated in the service appeal process and even attended mediation on the issue of R.M.'s foster placement on June 15, 1995. The mediation was then to be followed by a formal hearing, which was to be held in a expedited manner. Rather than complete the service appeal process, the GAL filed this emergency motion to change placement on June 19, 1995.
Under the circumstances here, the juvenile court had no authority under the Act to conduct an emergency hearing to change placement and order R.M.'s removal from Smith's home. Had there been an immediate and urgent necessity to remove R.M. from Smith's care, the juvenile court could have removed R.M. from such a dangerous placement by holding a temporary/shelter care hearing pursuant to section 2-10 of the Act. 705 ILCS 405/2-10 (West 1994). This section authorizes the juvenile court to remove a child from a placement if it finds probable cause to believe it is a matter of urgent or immediate necessity for the protection of the child. The GAL, however, does not claim that it was an urgent and immediate necessity to remove R.M. from Smith's home and certainly the evidence does not support such a finding.
Dr. Shalowitz testified that Smith's home was not an appropriate placement for R.M. and that it was best for her long-term development that she be removed from Smith's home as soon as possible. Dr. Shalowitz testified that keeping R.M. out of Smith's home is an emergency matter. However, Dr. Shalowitz obviously did not believe that R.M.'s removal from Smith's home was an immediate and urgent necessity since she had recommended that R.M. remain in Smith's home for 60 days after her release from the hospital in order to give Smith another chance to properly care for R.M. R.M was released from the hospital on March 13, 1995, and was removed from Smith's home on April 3, 1995. Therefore, Smith was never given an opportunity to implement the feeding techniques recommended in the 60-day contract. The record reveals that R.M. gained twice as much weight during her two-week stay in the hospital as she had during the prior four months in Smith's care and that, two weeks after her release from the hospital, she lost the weight she had gained in the hospital. R.M. gained only three ounces in the four months prior to hospitalization; however, she gained six ounces in the hospital while on a high caloric drink, but she lost this weight two weeks later. The loss of a few ounces does not indicate an immediate or urgent necessity that R.M. be removed from Smith's home. Rather, the GAL could have completed the service appeal process without putting R.M. in any immediate danger.
The GAL next claims that the juvenile court had authority to conduct a permanency review hearing and determine whether R.M. should be removed from Smith's home. Section 1-3(11.2) of the Act (705 ILCS 405/1-3(11.2)(West 1994)) defines a permanency review hearing as one in which the juvenile court conducts a hearing to review and determine the appropriateness of the permanency goal in light of the permanency alternatives and the appropriateness of the plan to achieve the goal. The GAL relies on In re Chiara C., 279 Ill.App.3d 761, 216 Ill.Dec. 344, 665 N.E.2d 404 (1996), in support of his claim that the hearing here, although not called a permanency review hearing, was in fact such a hearing. In Chiara, the court found that the juvenile court proceeding was the equivalent of a permanency review hearing since its purpose was to determine the appropriateness of the minor's residence and educational services.
However, the emergency hearing to determine whether R.M. should be removed from Smith's home was not a hearing to determine the appropriateness of the long-term plans and goals that had been set for R.M. Rather, R.M. was placed with Smith temporarily until a fair hearing could be held under the service appeal process to determine what placement was in R.M.'s best interests. Therefore, this hearing, conducted on an emergency basis, cannot be considered a permanency review hearing.
Furthermore, even if the juvenile court proceedings could be considered a permanency review hearing, only where the *658 court has found an abuse of discretion may the court order DCFS to change the permanency goal. Section 2-28 of the Act provides: "In reviewing the permanency goal * * * the standard of review to be employed by the court shall be whether [DCFS], in setting the permanency goal and the service plan, abused its discretion in light of the best interests of the child, the permanency alternatives, and the facts in the individual case." 705 ILCS 405/2-28(2) (West Supp.1995). The trial court here did not apply the abuse of discretion standard, but instead determined that the placement of R.M. in Smith's home was not in R.M.'s best interest.
We therefore do not find any statutory authority permitted the juvenile court to order R.M.'s removal from Smith's home. The GAL's action was simply an attempt to circumvent the administrative service appeal process. The trial court's order removing R.M. from Smith's home and placing her in the Lawtons' home is therefore vacated. In light of our decision, we need not address DCFS and Smith's claims that the GAL failed to exhaust his administrative remedies, nor need we address Smith's claim that the juvenile court deprived her of her right to notice and an opportunity to be heard when it ruled on the GAL's motion.
Vacated.
RAKOWSKI and TULLY, JJ., concur.