689 N.E.2d 1167 (1998)
294 Ill. App.3d 441
228 Ill.Dec. 746
In re A.L. et al., Minors (The Department of Children and Family Services, Petitioner-Appellant,
v.
T.R., Respondent-Appellee).
Nos. 2-97-0057, 2-97-0058.
Appellate Court of Illinois, Second District.
January 13, 1998.
*1168 James E. Ryan, Attorney General, Barbara A. Preiner, Solicitor General, Huma A. Khan, Diane M. Buschmann, Assistant Attorneys General, Chicago, Debra Smilie Brauer, Ill. Dept. of Children & Family Services, Aurora, for Department of Children & Family Services in No. 2-97-0057.
Joseph E. Birkett, Du Page County State's Attorney, Cathy J. Nusgart, Assistant State's Attorney, Wheaton, for the People in Nos. 2-97-0057 and 2-97-0058.
Kelli M. Smith (Court-appointed), Steve Helm & Associates, Naperville, Stephen W. Baker, Public Defender, Du Page County, Phyllis M. Devitt, Assistant Public Defender (Court-appointed), Wheaton, for T.R. in Nos. 2-97-0057 and 2-97-0058.
James E. Ryan, Attorney General, Huma A. Khan, Assistant Attorney General, Chicago, for Department of Children & Family Services in No. 2-97-0058.
Justice BOWMAN delivered the opinion of the court:
The Department of Children and Family Services (DCFS) appeals from an interlocutory order entered by the juvenile court of Du Page County granting appellee T.R.'s petition for change of foster placement and requiring DCFS, legal guardian of minors A.L. and T.L., to remove the minors from the care of their foster parents and select alternative foster placement. We affirm.
The following summary of facts is taken from the record. On March 4, 1993, the juvenile court found that there was an immediate and urgent necessity to place A.L. and T.L. in temporary shelter care. The juvenile court entered an order removing the minors from the home of their natural mother and stepfather, respondent and her husband, and placing them in DCFS's temporary custody. In July 1993, DCFS placed A.L. and T.L. in the foster care of Michael and Becky Turner.
While in foster care, A.L. and T.L. underwent medical treatment for their health problems. Dr. Nagamani Reddy, a child psychiatrist, conducted a psychiatric evaluation of A.L. and T.L. in August 1993. A.L. was diagnosed with posttraumatic stress disorder. T.L. was diagnosed with major depression. In January 1995, A.L. was admitted to the hospital and underwent a five to six week "comprehensive treatment program" as a result of his "voicing thoughts of wanting to die." Dr. Reddy also evaluated A.L. during his stay at the hospital and recommended that visitation with respondent stop as a result of A.L.'s agitated, anxious, and aggressive behavior after visits with respondent. Both A.L. and T.L. took medication to treat their conditions.
On December 13, 1993, the juvenile court appointed a special advocate on the minors' behalf. On May 2, 1995, the juvenile court adjudicated A.L. and T.L. neglected and made them wards of the court. Furthermore, it appointed DCFS custodian and legal guardian of A.L. and T.L. DCFS had articulated a permanency goal, a goal set by the service plan or during an administrative case review, of returning the children to respondent's home. However, during an administrative case review held on March 4, 1996, DCFS changed the permanency goal from "return home" to "foster family placement." In an order entered on May 29, 1996, the juvenile court found that the change in the permanency goal was not in the best interests of the children and remanded the matter to DCFS for a redetermination of the permanency goal. The juvenile court found, inter *1169 alia, that "[t]here are issues and questions surrounding the foster home placement of [A.L.] and [T.L.] which indicate that their foster home placement may have negatively impacted the natural mother's ability to see her children and reunify with them." Although a permanency review hearing was set for July 9, 1996, no such hearing was held.
On October 29, 1996, T.R. filed a petition for change of foster home placement. In her petition, she maintained that it was not in the best interests of the children to remain in the Turners' care. On November 12, 1996, DCFS filed a motion to strike respondent's petition for change of foster home placement. The juvenile court denied DCFS's motion to strike on November 15, 1996, and a hearing on respondent's petition followed. On December 17, 1996, the juvenile court granted the petition and ordered DCFS to remove A.L. and T.L. from the Turners' home and select alternative placement. Specifically, the juvenile court found:
"The service plan in this case consistently has been return home to the natural parents. It has interfered with this plan that the boys have not been able to see the mother, they have not been able to progress towards this role or make progress with the therapists who have been appointed for them.
I believe that at this time it would be in their best interests to take a fresh start. That they be relocated and to see if this plan can still be accomplished.
* * * * * *
But I'm looking to what is in the best interests of these children, and if there was not discussion with the Turners earlier, that does not change the fact that things have happened which have impaired the ability of the boys to progress towards the goal that's been set by DCFS."
Subsequently, DCFS filed a timely appeal.
DCFS's primary contention on appeal is that the juvenile court exceeded its statutory authority when it ordered the removal and transfer of the minors from the Turners' foster home. DCFS maintains that a juvenile court's authority is limited to that which is specifically prescribed by the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-1 et seq. (West 1996)). In short, absent the specific statutory authority, the juvenile court lacked subject matter jurisdiction to enter the order.
Respondent replies that the juvenile court was acting in the best interests of the minors and did not abuse its discretion when it ordered DCFS to remove them from the Turners' foster care. She argues that the court acted within its regulatory authority over administrative agencies. Moreover, she maintains that a court has the authority to order DCFS "to perform certain acts and provide services."
Initially we note that the Act governs the authority of a juvenile court and any proceedings therein. 705 ILCS 405/1-1 et seq. (West 1996). Subject matter jurisdiction is the power of the court to consider the general issue before the court and to grant the particular relief requested. In re M.M., 156 Ill.2d 53, 64, 189 Ill.Dec. 1, 619 N.E.2d 702 (1993). Any act exceeding that power is void. M.M., 156 Ill.2d at 64, 189 Ill.Dec. 1, 619 N.E.2d 702. Contrary to DCFS's assertion, except in cases involving administrative review, circuit court jurisdiction is conferred by the Illinois Constitution. In re Lawrence M., 172 Ill.2d 523, 529, 219 Ill.Dec. 32, 670 N.E.2d 710 (1996). However, the fact that circuit court jurisdiction is constitutionally derived does not permit a juvenile court to exceed its statutorily prescribed authority. Lawrence M., 172 Ill.2d at 529, 219 Ill.Dec. 32, 670 N.E.2d 710.
Resolution of this issue hinges upon the interpretation of the Act. The primary rule of statutory construction is to effectuate the legislature's intent. In re A.P., 179 Ill.2d 184, 195, 227 Ill.Dec. 949, 688 N.E.2d 642 (1997). In ascertaining the legislature's intent, courts examine the plain language of the statute. A.P., 179 Ill.2d at 195, 227 Ill.Dec. 949, 688 N.E.2d 642. Section 2-28(2) of the Act authorizes a juvenile court to hold permanency review hearings "until the court determines that the plan and goal have been achieved." 705 ILCS 405/2-28(2) (West 1996). A permanency review hearing is defined as:
"[A] hearing to review and determine (i) the appropriateness of the permanency goal in light of the permanency alternatives, *1170 (ii) the appropriateness of the plan to achieve the goal, (iii) the appropriateness of the services delivered and to be delivered to effectuate the plan and goal, and (iv) the efforts being made by all the parties to achieve the plan and goal." (Emphasis added.) 705 ILCS 405/1-3(11.2) (West 1996).
Section 2-23(3) authorizes a juvenile court to "enter any other orders necessary to fulfill the service plan." (Emphasis added.) 705 ILCS 405/2-23(3) (West 1996).
Ordinarily, our review of interlocutory orders is limited to a determination of whether a court has abused its discretion in granting or refusing the relief requested. Lawrence M., 172 Ill.2d at 526, 219 Ill.Dec. 32, 670 N.E.2d 710. However, when determining whether a trial court acted within its authority, a reviewing court may examine substantive issues. Lawrence M., 172 Ill.2d at 526, 219 Ill.Dec. 32, 670 N.E.2d 710. In this case, we are not bound by the traditional standard of review governing interlocutory orders and may consider the substantive issues because we are determining whether the juvenile court exceeded its authority under the Act. See Lawrence M., 172 Ill.2d at 526, 219 Ill.Dec. 32, 670 N.E.2d 710.
Before examining the grounds for the juvenile court's authority to enter the order, we will briefly assess the statutory basis for bringing a petition for change of foster placement and the juvenile court's authority for reviewing the petition. Respondent argues that section 2-28(4) allows any interested party to submit such a petition. DCFS responds that a petition for change of foster placement is not authorized under this provision of the Act. Section 2-28(4) provides in relevant part:
"The minor or any person interested in the minor may apply to the court for a change in custody of the minor and the appointment of a new custodian or guardian of the person or for the restoration of the minor to the custody of his parents or former guardian or custodian." 705 ILCS 405/2-28(4) (West 1996).
Although any interested person may apply for a change in custody under this provision, it has not been interpreted to permit only a change in physical custody. See In re Chiara C., 279 Ill.App.3d 761, 766, 216 Ill. Dec. 344, 665 N.E.2d 404 (1996) (section 2-28(4) does not authorize a court to change physical custody absent a change in legal custody). In addition, respondent has petitioned for neither the appointment of a new legal custodian nor the restoration of the minors to her custody. While respondent's petition cannot be brought under section 2-28(4), it can be construed as seeking review of the efforts made to achieve the goal of returning the minors to respondent because it raises questions concerning the placement of the minors in the Turners' foster home and the Turners' attempts to support this goal. See 705 ILCS 405/1-3(11.2), 2-28(2) (West 1996).
DCFS argues that respondent's petition cannot be interpreted as seeking a review of the propriety of the permanency goal pursuant to section 2-28(2). DCFS's argument, although valid, is not dispositive of this issue. Section 2-28(2) does not limit a juvenile court's inquiry to a review of the permanency goal. Rather, it confers upon the juvenile court the authority to conduct permanency review hearings. See 705 ILCS 405/2-28(2) (West 1996). These hearings may also include a juvenile court's review of the efforts made towards achieving the permanency goal and satisfying the service plan. See 705 ILCS 405/1-3(11.2) (West 1996). Although respondent's petition was not a request to review the permanency goal, we construe her petition as a request to review the efforts made towards returning the minors to her care.
We interpret the juvenile court's hearing on respondent's petition to be a "permanency review hearing." See 705 ILCS 405/1-3(11.2) (West 1996); Chiara C., 279 Ill. App.3d at 766, 216 Ill.Dec. 344, 665 N.E.2d 404. In Chiara C., the reviewing court found that the juvenile court proceeding, although not labelled a permanency review hearing, was equivalent to such a hearing because its purpose was to review the propriety of the minor's residential and educational services. Chiara C., 279 Ill.App.3d at 766, 216 Ill.Dec. 344, 665 N.E.2d 404. Similarly, although the juvenile court's hearing on the petition in the case sub judice was not designated a "permanency review hearing," it can be classified as *1171 such because the court reviewed the efforts made to satisfy the service plan and permanency goal. See 705 ILCS 405/1-3(11.2) (West 1996); Chiara C., 279 Ill.App.3d at 766, 216 Ill.Dec. 344, 665 N.E.2d 404. Specifically, the juvenile court found that while A.L. and T.L. were in the care of their foster parents, they had not progressed towards the ultimate goal of returning to respondent. Accordingly, because section 2-28(2) allows the juvenile court to hold a permanency review hearing to assess the progress made towards achieving the plan and goals set by DCFS, the juvenile court was statutorily authorized to hold such a hearing. See 705 ILCS 405/1-3(11.2), 2-28(2) (West 1996).
We next examine the juvenile court's authority to enter the order requesting removal and transfer of the minors. We find that the juvenile court was authorized to enter an order requesting DCFS to remove and transfer the minors from the Turners' foster home. The prevailing purpose of the Act is to serve the best interests of the minor (705 ILCS 405/1-2(1) (West 1996); In re R.G., 283 Ill.App.3d 183, 186, 218 Ill.Dec. 699, 669 N.E.2d 1225 (1996)), and the provisions of the Act must be construed liberally to effectuate this purpose (705 ILCS 405/1-2(4) (West 1996); Lawrence M., 172 Ill.2d at 530, 219 Ill.Dec. 32, 670 N.E.2d 710). Specifically, section 2-23(3) states that "[t]he court also shall enter any other orders necessary to fulfill the service plan." (Emphasis added.) 705 ILCS 405/2-23(3) (West 1996). After reviewing the record, we find that the juvenile court examined the efforts made towards achieving the service plan and found it necessary to enter an order to accomplish the goal set forth in the service planthe minors' return home to respondent. The record reveals that the juvenile court was acting in the best interests of the minors. When viewing the hearing and the juvenile court's order in light of the overriding purpose of the Act, we read section 2-23(3) of the Act as conferring the authority upon the juvenile court to enter the order removing A.L. and T.L. from the Turners' foster home and requesting DCFS to select alternative placement. See 705 ILCS 405/2-23(3) (West 1996).
DCFS's argument that the Act does not expressly authorize a juvenile court to make specific placements, while accurate, is misplaced. As support for its argument, DCFS relies upon In re R.M., 288 Ill.App.3d 811, 224 Ill.Dec. 337, 681 N.E.2d 652 (1997), and In re M.V., 288 Ill.App.3d 300, 224 Ill.Dec. 217, 681 N.E.2d 532 (1997). At issue in these cases is whether a juvenile court exceeds its statutory authority when it orders the removal and specific placement of a minor. In R.M., the juvenile court ordered the removal of a minor from one foster parent and her placement with specific foster parents. The reviewing court found that the juvenile court lacked the statutory authority to order the removal and specific placement of the minor. R.M., 288 Ill.App.3d at 820, 224 Ill.Dec. 337, 681 N.E.2d 652. Similarly, in M.V., the reviewing court found that the juvenile court exceeded its statutory authority when it ordered specific placement with the minor's former foster parents. M.V., 288 Ill.App.3d at 307, 224 Ill.Dec. 217, 681 N.E.2d 532.
Unlike these cases, the juvenile court in this case did not order specific placement of the minors. Instead, it ordered DCFS to remove the minors from the foster care of the Turners and to select alternative placement. There is a distinction between the juvenile court making a specific placement and requiring DCFS to find alternative placement for the minors. While we recognize that there are limited instances in which a juvenile court is authorized to make specific placements pursuant to the Act, these provisions are inapplicable in this instance. See, e.g., 705 ILCS 405/2-23(1) (West 1996) (juvenile court may order placement in accordance with placement options set forth in section 2-27(1)); 705 ILCS 405/1-5(2)(b) (West 1996) (juvenile court may order placement upon intervention by the foster parent when an application to restore minor to any parent, guardian, or legal custodian who caused the neglect or inflicted the abuse has been made); 705 ILCS 405/2-10(2) (West 1996) (juvenile court may order shelter care placement upon a finding of "immediate and urgent necessity" following a temporary custody hearing). Accordingly, DCFS's reliance on these provisions to show that the juvenile court exceeded its authority is unpersuasive.
*1172 DCFS's argument that placement with a specific foster parent is analogous to removal from a specific foster parent is likewise unavailing. DCFS relies upon In re R.M., 288 Ill.App.3d 811, 224 Ill.Dec. 337, 681 N.E.2d 652 (1997), as support for the proposition that a juvenile court lacks the authority to remove a minor from a specific foster parent. In R.M., the foster parent had initiated a service appeal, an appeal challenging the placement of a minor pursuant to section 5(o) of the Children and Family Services Act (20 ILCS 505/5(o) (West 1996)). A hearing officer determined that the minor could return to her foster parent's care. In lieu of completing the service appeal process, the guardian ad litem filed an emergency motion that challenged the hearing officer's decision. Subsequently, the juvenile court held an emergency hearing on the motion and ordered the minor's removal from the foster parent and specific placement in another foster home. The reviewing court found that the juvenile court's emergency hearing did not constitute a permanency review hearing. R.M., 288 Ill.App.3d at 819, 224 Ill.Dec. 337, 681 N.E.2d 652. Thus, not only was the juvenile court not authorized to hold the emergency hearing, but it also exceeded its authority when it ordered the removal and specific placement. R.M., 288 Ill.App.3d at 820, 224 Ill.Dec. 337, 681 N.E.2d 652.
Unlike R.M., no service appeal process had been initiated in this case. Moreover, the juvenile court's hearing on respondent's petition was equivalent to a permanency review hearing and therefore statutorily authorized. Finally, in R.M. the removal was ordered in conjunction with specific placement (R.M., 288 Ill.App.3d at 820, 224 Ill.Dec. 337, 681 N.E.2d 652), as opposed to alternative placement in this case.
We briefly note that during oral argument DCFS maintained that section 2-23(3) expressly prohibits specific placement. Our disposition, however, is unaffected because of our finding that an order requiring specific placement differs from an order; directing removal and alternative placement.
Contrary to DCFS's assertion, the juvenile court did not usurp a function within DCFS's authority and discretion. Rather, the juvenile court's order allows DCFS to exercise its discretion in selecting the appropriate foster placement. Not only was the juvenile court's order within the confines of the Act (see 705 ILCS 405/2-23(3) (West 1996)), but it also continues to afford DCFS discretion in performing its functions. Accordingly, we find that the juvenile court was statutorily authorized to order the removal and transfer of the minors from the Turners' foster home. As such, we affirm the juvenile court's order.
For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.
Affirmed.
DOYLE and COLWELL, JJ., concur.