No. 3--09--0345

Filed May 25, 2010

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2010

| | |
|---|---|
| In re M.P., | ) Appeal from the Circuit Court |
| | ) of the 10th Judicial Circuit, |
| a Minor | ) Peoria County, Illinois, |
| | ) |
| (The People of the State of | ) |
| Illinois, | ) |
| | ) |
| Petitioner-Appellee, | ) No. 07--JA--288 |
| | ) |
| v. | ) |
| | ) |
| Debra P. and Darold P., | ) Honorable |
| | ) Kim L. Kelley, |
| Respondents-Appellants). | ) Judge, Presiding. |

JUSTICE SCHMIDT delivered the opinion of the court:

On October 23, 2008, the trial court granted the State's motion for change of placement of the minor, M.P., from the foster home of respondents, Debra P. and Darold P. Respondents filed a motion to intervene, which was denied. Respondents then filed a motion to reconsider the denial of the motion to intervene and vacate the change of placement order, pursuant to section 2--1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2--1401 (West 2008)). Respondents argued that the change of placement was void because they received inadequate notice of the

motion hearing.  The trial court denied the respondents' section 2--1401 motion.  On appeal, respondents argue that the October 23, 2008, change of placement order was void because: (1) respondents did not receive adequate notice; and (2) the court lacked authority to remove the minor from foster placement with respondents.  We affirm.

### FACTS

This matter came to the attention of the Department of Children and Family Services (DCFS) on October 29, 2007, when M.P. arrived in the emergency room with abdominal injuries requiring several surgeries and a month-long hospital stay.  On December 4, 2007, the State filed a juvenile petition alleging that M.P. was abused and neglected.  The trial court granted DCFS temporary custody of M.P., who was placed into relative foster care with her maternal grandparents, the respondents.

Catherine Shockley of Counseling and Family Services (CFS) was assigned as the caseworker.  After their initial meeting at the respondents' home, respondents would not allow Shockley into their home because they claimed she was rude, disrespectful, and unprofessional.  On February 8, 2008, a notice to remove M.P. was given to the respondents by either CFS or DCFS.  Respondents administratively appealed the removal decision, and a clinical review was scheduled.  In the interim, on March 13, 2008, the trial court ordered respondents to allow Shockley into their home

2

or risk having M.P. removed. On March 26, 2008, at the DCFS clinical review, all parties agreed that the case would be transferred to another agency.

On April 17, 2008, M.P. was adjudicated abused and neglected. On May 15, 2008, at the dispositional hearing, the trial court made M.P. a ward of the court and granted DCFS guardianship, with the right to place. The order indicated that respondents were to "cooperate fully and completely with [the] agencies." The permanency goal was set as returning M.P. home to her father, George C., within five months. An initial permanency review hearing was set for October 23, 2008.

After the case was transferred, the new caseworker, Nicole Friend, opined in a permanency review report that "[g]iven the history of this foster home with the previous agency and [respondents'] lack of cooperation and communication," it was difficult to work with them. On October 20, 2008, the State filed a motion for change of placement, alleging that: (1) respondents refused to allow a prior caseworker into their home until ordered to do so on March 13, 2008; (2) the dispositional order of May 15, 2008, indicated that respondents were to "cooperate fully and completely with [the] agencies"; (3) after M.P. was placed with respondents, Darold refused to meet with the caseworker and Debra was uncommunicative; and (4) Darold failed to report that M.P. became upset before visits with her father,

was left with babysitters during visits, and returned "smelly and hungry."

On October 23, 2008, the court heard the State's change of placement motion and conducted a permanency review hearing. The court acknowledged that the State filed "a Motion for Change of Placement on October 20th, 2008, called it up for today's hearing, sent notice to all counsel of record, parties of record, and to the foster parents."

Friend testified that although she did not have any concerns as to M.P.'s physical safety, she was concerned with "how [Darold] react[ed] to things" and "[t]he fact that [respondents] haven't continued to cooperate the entire time." Friend felt that M.P. was happy, but the fact that she played through Darold's yelling without getting upset indicated to her that Darold likely raised his voice on a regular basis. Friend believed that M.P. was well bonded to respondents and moving her out of respondents' home "would have an impact [on M.P.] but she would adapt." Friend recommended that M.P. be removed from respondents' home and placed in a nonrelative home.

The court acknowledged that since the motion for change of placement affected the foster parents, it was appropriate "to give them an opportunity, if they wish[ed], to state anything in defense against the motion." After Debra testified relevant to the specific allegations in the motion, the trial court asked

4

Debra, "Anything else you want to tell me?" Debra replied that she and Darold loved M.P. and that the caseworker had even noted how much the respondents loved M.P., and "it would damage [M.P.] to be removed from the only family that she has been close to." Debra also confirmed that she and Darold were relative foster parents and not licensed foster parents. They were willing to become licensed foster parents and do whatever it took to take care of M.P.

The trial court asked Darold if there was anything about the allegations in the motion that he wanted to tell the court. Darold testified in regard to the allegations. Darold also told the court that he loved M.P. and that he and M.P. were together from the time she woke up until the time his wife got home from work. The trial court asked if Darold would like to say anything else, but he declined.

The trial court granted the State's motion for change of placement on the basis of the "disobedience of repeated orders to co-operate; not [being] trustworthy; [and] not serving the best interest of the child." Respondents were granted supervised visits with M.P. once per month for one hour. Also, the trial court found George C. was dispositionally unfit and changed the permanency goal from return home within five months to return home within one year.

On December 5, 2008, respondents filed a motion for an order

5

granting standing and intervenor status. In the motion, respondents argued that they did not receive adequate notice of the State's change of placement motion and, as a result, were unable to hire an attorney. On January 15, 2009, the trial court denied respondents' motion.

On February 13, 2009, respondents filed a motion to reconsider the denial of their motion to intervene and to vacate the change of placement order, pursuant to section 2--1401 of the Code (735 ILCS 5/2--1401 (West 2008)). Specifically, respondents argued that the order granting the State's request for change of placement was void, or in the alternative should be vacated, and that they should be allowed to intervene in the case. Respondents claimed they received less than 24 hours' notice prior to the change of placement hearing. Also, respondents claimed that the State concealed the inadequate notice with a "fraudulent Proof of Service."

On April 2, 2009, the trial court denied the motion to vacate, finding there was no just reason for delaying an appeal of the order under Rule 304(a) (210 Ill. 2d R. 304(a)). Also, the trial court ordered that respondents were permitted to intervene and noted that "they [were] now parties."

On April 30, 2009, respondents filed an appeal of the trial court's April 2, 2009, order denying their motion to vacate the October 23, 2008, change of placement order. We affirm.

6

ANALYSIS

On appeal, respondents argue that the trial court erred in denying their section 2--1401 motion to vacate the October 23, 2008, order because the order was void in that: (1) the State failed to provide adequate notice of the change of placement proceedings; and (2) the court did not have the authority to remove M.P. from their care. Section 2--1401 establishes a statutory procedure that permits a final judgment that is older than 30 days to be vacated. 735 ILCS 5/2--1401 (West 2008). To obtain relief under section 2--1401, a defendant must set forth factual allegations showing: (1) the existence of a meritorious claim; (2) due diligence in presenting the claim; and (3) due diligence in filing the section 2--1401 petition. People v. Pinkonsly, 207 Ill. 2d 555, 802 N.E.2d 236 (2003). When a trial court enters either a judgment on the pleadings of a section 2--1401 petition or a dismissal of a section 2--1401 petition, we review the order under a de novo standard. People v. Vincent, 226 Ill. 2d 1, 871 N.E.2d 17 (2007).

I. Denial of Motion to Vacate

First, respondents claim that the State's failure to give them proper notice of the change of placement motion violated their due process rights and rendered the order void. Our supreme court has held that the failure to give proper notice of juvenile proceedings to parents of a minor and to any necessary

parties is a due process violation of the parents' constitutional rights. In re A.H., 195 Ill. 2d 408, 748 N.E.2d 183 (2001). However, foster parents are not considered necessary parties who have a due process right to proper notice of the proceedings. A.H., 195 Ill. 2d 408, 748 N.E.2d 183; 705 ILCS 405/1--1 et seq. (West 2008) (providing that necessary parties include parents or legal guardians but not foster parents).

Nonetheless, under the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1--1 et seq. (West 2008)), respondents had a statutory right to adequate notice and a statutory right to be heard. Pursuant to section 1--5(2)(a) of the Act, "any current or previously appointed foster parent *** interested in the minor has the right to be heard by the court, but does not thereby become a party to the proceeding." 705 ILCS 405/1--5(2)(a) (West 2008). "In addition[,] *** any current foster parent *** shall be given adequate notice at all stages of any hearing or proceeding under this Act." 705 ILCS 405/1--5(2)(a) (West 2008).

Here, respondents did not receive adequate notice of the change of placement motion as required by the Act. However, respondents waived the issue by participating at the hearing and failing to object to the inadequate notice. See A.H., 195 Ill. 2d 408, 748 N.E.2d 183 (foster parents waived notice by failing to object during the hearing and by testifying at the continued hearing the following day). Respondents were present at the

8

hearing and did not request a continuance or object to the proceeding. Additionally, respondents were not prejudiced because they were given a full opportunity to exercise their right to be heard. The record demonstrates that the court gave each respondent an opportunity to tell the court anything he or she wished and respondents each did so. Therefore, any error was both harmless and waived. See A.H., 195 Ill. 2d at 424, 748 N.E.2d at 193.

II. Authority to Remove M.P. From Foster Placement

Respondents also argue that the October 23, 2008, order was void or should be vacated because the court did not have authority to order a change of placement and removal of M.P. from their home. We disagree.

Courts do not have original jurisdiction over the removal of a child from his parents based upon abuse, neglect, or dependency because the issue was not known at common law. A.H., 195 Ill. 2d 408, 748 N.E.2d 183. However, through the Act the legislature has conferred limited jurisdiction of such matters on the circuit courts. A.H., 195 Ill. 2d 408, 748 N.E.2d 183. Therefore, the court's power to act is purely statutory, and "'[a]ny action taken by the circuit court that exceeds its jurisdiction is void and may be attacked at any time.'" A.H., 195 Ill. 2d at 416, 748 N.E.2d at 189, quoting In re Estate of Gebis, 186 Ill. 2d 188, 193, 710 N.E.2d 385, 387 (1999).

9

The purpose of the Act is to serve the best interest of the minor. 705 ILCS 405/1--2(1) (West 2008). Under section 2--28(2) of the Act, a juvenile court is authorized to hold permanency review hearings until the service plan and permanency goal have been achieved. 705 ILCS 405/2--28(2) (West 2008). "The court shall set a permanency goal that is in the best interest of the child." 705 ILCS 405/2--28(2) (West 2008). In setting the permanency goal, the court shall consider, among other things, the following factors: (1) the age of the child; (2) the options available for permanence; (3) the current placement and intent of family regarding adoption; and (4) the emotional, physical, and mental status or condition of the child. 705 ILCS 405/2--28(2) (West 2008).

Permanency review hearings may include a review of the efforts made toward achieving the permanency goal and service plan. 705 ILCS 405/1--3(11.2) (West 2008). Also, section 2--23(3) of the Act authorizes the juvenile court to enter any other orders necessary to fulfill the service plan. 705 ILCS 405/2--23(3) (West 2008). However, the court is not empowered to order specific placements to be included in the plan. 705 ILCS 405/2--23(3) (West 2008); see also In re R.M., 288 Ill. App. 3d 811, 681 N.E.2d 652 (1997); In re M.V., 288 Ill. App. 3d 300, 681 N.E.2d 532 (1997).

A change of placement request can be construed as seeking a

10

review of efforts made to achieve the permanency goal and a foster parent's effort to support the permanency goal. In re A.L., 294 Ill. App. 3d 441, 689 N.E.2d 1167 (1998). Here, the State's request for change of placement was essentially a request for a review of the respondents' efforts toward achieving the permanency goal.

We acknowledge that under section 2--23(3) of the Act, a trial court lacks the statutory authority to order specific placement of a minor with a specific foster family. In this case, the court did not order a specific placement but ordered that M.P. be removed from respondents' home and "placed elsewhere." See A.L., 294 Ill. App. 3d 441, 689 N.E.2d 1167 (distinguishing an order for removal for unspecified alternate placement from an order for specific placement). Accordingly, we find the court was authorized in addressing the change of placement motion and determining whether it was in M.P.'s best interest to remove her from respondents' foster care. As such, the court's change of placement removal order was not void.

Consequently, the respondents failed to set forth factual allegations showing the existence of a meritorious claim in their section 2--1401 petition. As a result, we find that the trial court did not err when it denied respondents' motion to vacate the change of placement order of October 23, 2008. Accordingly, we deny respondents' request that this court "reverse the order

11

changing the placement of [M.P.], and remand the case with the directions to return the minor to the custody of the respondents."

## CONCLUSION

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

McDADE and O'BRIEN, JJ., concur.